IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 19, 2000 Session

## THOMAS W. YELTON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 6771     William Charles Lee, Judge**

---

**No. M1999-00597-CCA-R3-PC - Filed November 9, 2000**

---

The petitioner, Thomas W. Yelton, appeals the denial by the Bedford County Circuit Court of his petition for post-conviction relief from his 1992 convictions of fabricating evidence, theft of property worth more than one thousand dollars ($1,000), coercion of a witness, and harassment. Specifically, he alleges that he is entitled to relief from his convictions because he received ineffective assistance of counsel during trial proceedings. The petitioner predicates his claim of ineffective assistance of counsel upon the following grounds: (1) trial counsel failed to submit to the trial court a motion requesting the severance of his offenses; (2) trial counsel maintained inadequate contact with the petitioner during trial proceedings; (3) trial counsel failed to adequately investigate his case; and (4) trial counsel failed to adequately advise the petitioner concerning the waiver of his right to appeal his convictions. Following a review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA McGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Thomas W. Yelton.

Paul G. Summers, Attorney General and Reporter, David H. Findley, Assistant Attorney General, and Robert G. Crigler, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
#### I.  Factual Background

On March 24, 1992, the petitioner, Thomas W. Yelton, was tried by a jury in the Bedford County Circuit Court for one count of fabricating evidence, one count of theft of property worth more than one thousand dollars ($1,000), two counts of coercion of a witness, one count of intentional killing of an animal, one count of false reports, and one count of harassment. The jury acquitted the petitioner of the offense of false reports but otherwise returned verdicts of guilt.

On April 6, 1992, the trial court conducted a sentencing hearing, the transcript of which is included in the record in this post-conviction appeal. The transcript reflects that the trial court sentenced the petitioner to nine years incarceration in the Tennessee Department of Correction for the offense of fabricating evidence, six years incarceration for the offense of theft, six years incarceration for each offense of coercion of a witness, and nine months incarceration for the offense of harassment. The court further ordered that the petitioner serve his sentences for fabricating evidence and harassment concurrently with one another and consecutively to his sentence for theft of property and that he serve his sentences for coercion of a witness concurrently with one another and consecutively to the other sentences, resulting in an effective sentence of twenty-one years incarceration.

The transcript of the sentencing hearing additionally reflects that the trial court did *not* impose a sentence for the offense of intentional killing of an animal due to the court's concern that the State had failed to establish venue in that case and due to the State's announcement at the sentencing hearing of an agreement between the State and the petitioner. Specifically, the State agreed to the dismissal with prejudice of the intentional killing of an animal case, and the petitioner, in return, agreed to waive his right to appeal the remaining convictions. Prior to sanctioning the agreement, the trial court questioned the petitioner concerning the agreement, reiterating the terms of the agreement and ensuring that the petitioner understood those terms.

The record in this appeal contains written waivers of the petitioner's right to appeal his convictions, including one count of fabricating evidence, one count of theft of property worth more than one thousand dollars ($1,000), two counts of coercion of a witness, and one count of harassment. The written waivers were filed in the Bedford County Circuit Court on the day of the sentencing hearing and appear to have been signed on that day by both the petitioner and his attorney.

Notwithstanding the above waivers, on July 9, 1992, the petitioner filed pro se in the Bedford County Circuit Court a notice of appeal of all of his convictions. When his efforts to appeal his convictions apparently proved unsuccessful, the petitioner filed the instant petition for post-conviction relief in the same court on July 16, 1993. The petitioner also filed a memorandum in support of his petition. Moreover, the post-conviction court appointed counsel who filed several amended petitions. The post-conviction court conducted an evidentiary hearing on March 23, 1999.[1]

At the hearing, the petitioner testified on his own behalf. He confirmed that he was alleging the ineffective assistance of his trial counsel, whom he apparently retained upon being

_____

[1] At the time of his offenses in this case, the petitioner was released on parole from a sentence of life imprisonment imposed pursuant to his prior conviction in Alabama of first degree murder. Following his conviction of the instant offenses and the trial court's imposition of sentencing, the petitioner returned to Alabama in order to resume service of his sentence of life imprisonment. The petitioner filed his petition for post-conviction relief in this case while serving his life sentence in the Alabama Department of Corrections. The Bedford County Circuit Court held the petition in abeyance until the petitioner's return to Tennessee and his commencement of the service of his sentences for these offenses.

charged with these offenses and after providing a confession to the police. With respect to his attorney's performance, the petitioner recounted that, prior to his trial, he was incarcerated in the Bedford County Jail, and his attorney visited him at the jail on only two occasions for the sole purpose of collecting the attorney's fee. The petitioner conceded that he also met with his attorney in court on at least two occasions for preliminary proceedings in his cases and spoke with his attorney on the telephone on at least three occasions. The petitioner additionally corresponded with his attorney by mail. According to the petitioner, he and his attorney discussed potential witnesses in his cases; however, his attorney did not otherwise discuss with him the evidence in his cases, including any discovery obtained from the State, nor did his attorney discuss with the petitioner any ongoing plea negotiations. In particular, the petitioner stated that he was surprised at trial by the testimony of the State's principal witness concerning tape recordings relevant to his cases.

The petitioner also asserted that, to his knowledge, his attorney did not file a motion requesting discovery or obtain any discovery from the State. Moreover, the petitioner alleged that his attorney neglected to interview the State's witnesses prior to trial and neglected to interview potential defense witnesses listed by the petitioner in a letter to his attorney. The petitioner conceded that his attorney did subpoena some of these potential defense witnesses; however, he complained that none of the witnesses testified on his behalf at trial.

The petitioner further complained that, prior to his trial, he asked his attorney to file a motion requesting the severance of his offenses, and his attorney failed to comply with his request. The petitioner conceded that all of the charged offenses, with the exception of one offense, involved the same victim and arose from a "common plan or scheme."

Finally, the petitioner denied that he waived his right to appeal any conviction other than the theft of property conviction. The petitioner conceded that the signatures affixed to all of the waiver of appeal documents appear to be his signatures. However, he asserted that he only recalled signing one written waiver of appeal and, therefore, only acknowledged his signature on the document waiving his right to appeal his conviction of theft of property.

The petitioner also admitted that he was present at the sentencing hearing when the prosecutor announced his agreement with the State waiving his right to appeal all of his convictions and that the trial court questioned him concerning the agreement. He confirmed his familiarity with the criminal justice system, conceding that he had previously been convicted by a jury in Alabama of first degree murder and that he had previously pled guilty in Bedford County to arson. Nevertheless, the petitioner asserted that he was confused at the April 6, 1992 sentencing hearing.

At the post-conviction evidentiary hearing, in rebuttal of the petitioner's allegations, the State presented the testimony of the petitioner's trial attorney, Rondle T. Wilson. Mr. Wilson testified that, at the time of the petitioner's trial, he had been practicing law for approximately thirty-three years, having earned his license to practice law in 1959. According to Mr. Wilson, during the course of his career, he served as an assistant district attorney general for ten or twelve years and

otherwise engaged in private practice. Approximately twenty-five percent (25%) of his private practice involved criminal cases.

With respect to the petitioner's cases, Mr. Wilson confirmed that he represented the petitioner at trial. He also confirmed that, prior to the petitioner's trial, he met with his client at the jail on two occasions. He also met with the petitioner in court on several occasions for preliminary proceedings. Finally, he spoke with the petitioner on the telephone on approximately three occasions and corresponded with the petitioner by mail prior to trial. Contrary to the petitioner's testimony, Mr. Wilson asserted that he discussed the petitioner's case with him on all of these occasions, including Mr. Wilson's visits to the Bedford County Jail.

Mr. Wilson conceded that he did not file a motion requesting discovery from the State. He explained that, pursuant to the local rules of court in Bedford County, he was not required to file a formal motion for discovery. Rather, the State maintained an "open file" policy. Mr. Wilson confirmed that, in fact, he received discovery in the petitioner's cases.

Mr. Wilson also testified that he interviewed the principal State witnesses at a preliminary hearing in the petitioner's cases and also interviewed several additional witnesses on other occasions prior to trial. Moreover, Mr. Wilson asserted that he interviewed most of the potential defense witnesses to whom he was referred by the petitioner. He stated that he did not call those witnesses to testify on the petitioner's behalf at trial because, "[he] did not find any that would be beneficial to [the petitioner]."

Mr. Wilson further testified at the post-conviction evidentiary hearing that, either prior to or during the petitioner's trial, he became aware that the State possessed tape recordings relating to the petitioner's cases. He could not recall any details of proceedings relating to these recordings. However, the petitioner's post-conviction counsel conceded that, according to the transcript of the petitioner's trial proceedings, the State did not provide the tape recordings to defense counsel prior to trial. Rather, trial counsel first became aware of the tape recordings when the State's primary witness testified concerning their contents. At that point, defense counsel objected both to the witnesses' testimony and to the introduction of the tape recordings. Defense counsel argued that the State had failed to comply with Tenn. R. Crim. P. 16 and that the tape recordings were the result of an illegal wiretap. The trial court sustained defense counsel's Tenn. R. Crim. P. 16 objection to the introduction of the tape recordings into evidence. However, the trial court disagreed that the recordings were the result of any illegal wiretap and admitted into evidence the testimony of the State's witness concerning certain contents of the recordings.

As to his failure to file a motion for severance of the petitioner's offenses, Mr. Wilson explained at the post-conviction evidentiary hearing that the petitioner chose to forego contesting the consolidation of his offenses because the petitioner wanted to resolve the pending charges and return to Alabama as soon as possible. Moreover, Mr. Wilson confirmed that, with the exception of one offense, all of the charged offenses involved the same victim and were a part of a "common scheme or plan."

As to the petitioner's waiver of his right to appeal his convictions, Mr. Wilson testified that the petitioner entered into the agreement with the State because, again, the petitioner wished to return to Alabama as soon as possible. Specifically, Mr. Wilson noted that the trial court was concerned that the appropriate venue for the intentional killing of an animal case was Marshall County, and the court was inclined to dismiss that case. According to Mr. Wilson, the petitioner wanted to avoid the possibility that the State would re-indict and prosecute him for that offense in Marshall County and, consequently, delay his return to Alabama. Therefore, in return for the State's agreement to the dismissal with prejudice of the intentional killing of an animal case, the petitioner agreed to the waiver of his right to appeal his other convictions. Mr. Wilson acknowledged his signatures on the waiver of appeal documents and testified that the other signatures on the waiver of appeal documents appear to belong to the petitioner. Mr. Wilson tentatively recalled witnessing the petitioner signing the documents. He further observed that his regular practice is to be present when a client signs any document waiving substantial rights.

The State additionally presented at the post-conviction evidentiary hearing the testimony of Robert G. Crigler, the assistant district attorney general who prosecuted the petitioner's cases. Mr. Crigler testified that, at the petitioner's sentencing hearing, the State agreed to the dismissal with prejudice of the intentional killing of an animal case in return for the petitioner's waiver of his right to appeal his other convictions. In accordance with this agreement, Mr. Crigler provided to Mr. Wilson waiver of appeal documents for each remaining conviction. On the same day, Mr. Wilson returned the documents to Mr. Crigler, at which time Mr. Crigler observed that the documents appeared to have been signed by both Mr. Wilson and the petitioner.

Following the post-conviction evidentiary hearing, the court denied the petitioner relief from his convictions, finding that the petitioner had failed to establish by a preponderance of the evidence that any deficiency in trial counsel's performance rose to constitutional proportions.

## II. Analysis

The petitioner now challenges the post-conviction court's denial of relief. As the post-conviction court correctly noted, because the petitioner filed the instant petition prior to the effective date of the 1995 Post-Conviction Procedure Act, he was required to prove any factual allegations by a preponderance of the evidence. See, e.g., McConnell v. State, 12 S.W.3d 795, 797 n.2 (Tenn. 2000). Moreover, on appeal, the post-conviction court's factual findings are binding upon this court unless the evidence preponderates otherwise. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). "In evaluating whether the evidence preponderates against the . . . [post-conviction] court's findings, we are guided by longstanding rules of appellate procedure." Henley v. State, 960 S.W.2d at 578. Thus, questions concerning the credibility of witnesses and the weight and value of their testimony are for resolution by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). This court will not re-weigh or reevaluate the evidence or substitute its inferences for those of the post-conviction court. Williams v. State, No. 03C01-9801-CC-00013, 1999 WL 58608, at *2 (Tenn. Crim. App. at Knoxville, February 9, 1999). That having been said, this court reviews de novo mixed questions

of law and fact, including the ultimate issue of whether counsel rendered constitutionally ineffective assistance. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

In order to establish ineffective assistance of counsel in contravention of the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution, a petitioner must demonstrate that (1) his counsel's representation was deficient, and that (2) the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687-697, 104 S. Ct. 2052, 2064-2069 (1984); see also Henley, 960 S.W.2d at 579-580; Powers v. State, 942 S.W.2d 551, 557 (Tenn. Crim. App. 1996). Reviewing courts need not address these components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. Henley, 960 S.W.2d at 580.

In order to demonstrate that his counsel's performance was deficient, the petitioner was required to show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Washington, 466 U.S. at 688; 104 S. Ct. at 2064; see also Burns, 6 S.W.3d at 461-462. In Tennessee, our supreme court has interpreted this test to require a showing that counsel's performance was not within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In applying this test, this court should refrain from second-guessing tactical and strategic decisions by defense counsel. Henley, 960 S.W.2d at 579. Rather, this court should defer to such decisions if they are based upon adequate preparation. Burger v. Kemp, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987); see also Holt v. State, No. 01C01-9805-CC-00201, 1999 WL 729206, at *7 (Tenn. Crim. App. at Nashville, September 20, 1999).

Moreover, a reviewing court should not examine every allegedly deficient act or omission in isolation, but rather in the context of the case as a whole. State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). Ultimately, the primary concern of the court should be the fundamental fairness of the trial proceedings. Id. In other words, as previously noted, a petitioner must establish prejudicial, as opposed to merely deficient, performance by trial counsel. In order to establish prejudice, a petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different but for the defective performance of counsel. Henley, 960 S.W.2d at 580. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Washington, 466 U.S. at 694; 104 S. Ct. at 2068.

In this case, the petitioner first contends that his counsel rendered ineffective assistance in failing to file a motion for severance of his offenses. He argues that he "specifically requested that his cases be tried individually, [and] said request went ignored by Mr. Wilson." However, as noted previously, Mr. Wilson testified at the post-conviction evidentiary hearing that, in fact, the petitioner chose to forego contesting the consolidation of his offenses due to his desire to resolve the charges expeditiously. Although the post-conviction court did not explicitly address in its "Findings of Fact and Conclusions of Law" counsel's failure to file a motion for severance, the court clearly accredited the testimony of Mr. Wilson.

Moreover, Tenn. R. Crim. P. 14(b)(1) provides that

[i]f two or more offenses have been joined or consolidated for trial . . . , the defendant shall have a right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others.

See also Spicer v. State, 12 S.W.3d 438, 445 (Tenn. 2000). In this case, both the petitioner and his trial counsel testified at the post-conviction evidentiary hearing that all of the offenses charged by the State, with the possible exception of one offense, involved the same victim and were part of a "common scheme or plan," and the petitioner did not identify any evidence of one offense that would have been inadmissible upon the trial of the others. As to the single charged offense that was not included in the "common scheme or plan," the petitioner has failed to establish that trial counsel's compliance with his instructions in this regard was objectively unreasonable under prevailing professional norms.

The petitioner next contends that trial counsel failed to maintain adequate contact with him during trial proceedings. Initially, we note that there exists no minimum number of meetings between counsel and client necessary to the provision of constitutionally effective assistance of counsel. See, e.g., United States v. Olson, 846 F.2d 1103, 1108 (7th Cir. 1988). Keeping in mind this general principle, we further note that the petitioner himself conceded at the post-conviction evidentiary hearing that, prior to trial, his attorney met with him on several occasions, spoke with him on the telephone, and corresponded with him by mail. Although the petitioner contends that his attorney did not discuss his cases on these occasions, this contention is belied by Mr. Wilson's testimony. As noted previously, the post-conviction court clearly accredited Mr. Wilson's testimony.

The petitioner also asserts that, prior to his trial, trial counsel failed to obtain discovery from the State, failed to interview State witnesses, and failed to interview potential defense witnesses. He argues that, due to his lack of preparation, trial counsel failed to call certain witnesses to testify on the petitioner's behalf. Once again, however, the petitioner's contentions are contradicted by Mr. Wilson's testimony. We also note that the petitioner failed to present the testimony of any omitted defense witnesses at the post-conviction evidentiary hearing. Black v. State, 794 S.W.2d 752, 753 (Tenn. Crim. App. 1990); Meeks v. State, M1998-00791-CCA-R3-PC, 2000 WL 235825, at *6 (Tenn. Crim. App. at Nashville, March 3, 2000); Jones v. State, No. 03C01-9606-CR-00227, 1997 WL 547997, at *4 (Tenn. Crim. App. at Knoxville, September 5, 1997).

The petitioner further contends that, due to his lack of preparation, trial counsel failed to learn prior to trial that the State possessed certain incriminating tape recordings that were obtained as a result of an illegal wiretap. Therefore, trial counsel was unable to file a motion to suppress the recordings and any testimony relating to the recordings. Yet, as noted previously, Mr. Wilson testified that he interviewed the State's witnesses prior to trial. He also testified that, although he did not file a formal motion for discovery, he acted in accordance with the local rules of court and, in fact, obtained discovery from the State. The petitioner's post-conviction counsel effectively

conceded that, according to the transcript of the trial proceedings, the State withheld the tape recordings from defense counsel prior to trial. In short, the petitioner has not demonstrated by a preponderance of the evidence that Mr. Wilson's failure to obtain the tape recordings prior to trial was the result of any lack of preparation by Mr. Wilson. Moreover, post-conviction counsel conceded that, upon learning of the recordings, trial counsel immediately asked the trial court to exclude the recordings and testimony relating thereto, both citing Tenn. R. Crim. P. 16 and arguing that the disputed evidence was the fruit of an illegal wiretap.

Finally, the petitioner contends that Mr. Wilson rendered ineffective assistance in failing to ensure that the petitioner understood the terms of his agreement with the State prior to waiving his right to appeal his convictions. Assuming that this court does not otherwise grant the petitioner relief from his convictions, the petitioner effectively requests a delayed appeal. Tenn. Code Ann. § 40-30-120 (1993). However, the record reflects that, in fact, Mr. Wilson, the prosecutor, and the trial court all advised the petitioner concerning the terms of his agreement with the State, that the petitioner fully understood the terms of his agreement with the State, and that he knowingly and voluntarily waived his right to appeal his convictions. As our supreme court has previously observed, "the law does not require an appeal of a conviction in a criminal case in the event the defendant, for reasons satisfactory to himself, desires not to have such an appeal." Collins v. State, 670 S.W.2d 219, 221 (Tenn. 1984).

### III. Conclusion
For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE