Walter L. POWERS, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee,
at Nashville.

Sept. 30, 1996.

No Permission to Appeal Applied
for to the Supreme Court.

**552**

Geoffrey Coston, Nashville, for appellant.

Charles W. Burson, Attorney General and Reporter, Sarah M. Branch, Assistant Attorney General, Criminal Justice Division, Victor S. (Torry) Johnson, III, District Attorney General, Jon Seaborg, Asst. District Attorney General, Nashville, for appellee.

## OPINION

HAYES, Judge.

The appellant, Walter L. Powers, appeals the denial of his petition for post-conviction relief by the Criminal Court of Davidson County. On January 15, 1993, pursuant to the appellant's pleas of guilty, the trial court entered judgments of conviction for three counts of indecent exposure, class A misdemeanors, and one count of aggravated criminal trespass, a class B misdemeanor. *See* Tenn.Code Ann. §§ 39–13–511 (1991) and 39–14–406 (1991). The plea agreement originally provided that the appellant would receive consecutive sentences of eleven (11) months and twenty-nine (29) days for the indecent exposure convictions and release eligibility percentages of one hundred (100) percent. The court would suspend all but five (5) months of the sentences, and the appellant would serve one hundred (100) percent of the five (5) months, day for day. Following confinement, the appellant would be released and placed on probation for eleven (11) months and twenty-nine (29) days and, as a condition of probation, would obtain treatment at Luton Mental Health facility.[1] For

---

1. The record reflects that the appellant has a history of exposing himself to children and others. He was convicted in 1981 for indecent exposure to children in California, in 1985 for public indecency in Georgia, in 1986 for "[t]ouch[ing or] [h]andl[ing a] child for [l]ustful [p]urpose" in Mississippi, and in 1988 for indecent exposure in Erin, Tennessee. The record further reflects that, following the 1985 Georgia

the aggravated criminal trespass conviction, the court was to sentence the appellant to 6 months incarceration, again setting the release eligibility percentage at one hundred (100) percent. This sentence would be served consecutively to the sentences for indecent exposure. The court was to suspend the entire sentence, and place the appellant on probation for six months, also conditioned upon treatment at Luton Mental Health Center. The effective date of probation in all cases was April 15, 1993.

On April 2, 1993, the trial court conducted a hearing, at which the State proposed placing the appellant, instead, on Community Corrections, to enable the State to pay for the appellant's treatment at Luton Mental Health Center. The appellant's attorney, James Paul Newman, indicated that the appellant wanted the court to enforce the original plea agreement. Nevertheless, due to the court's concern that the appellant would not comply with the terms of the original agreement, the court determined that it would place the appellant on intensive probation, stating, "Now, if [the defendant] doesn't like that he can have a new trial and we'll set it in August for trial." The court offered further explanation:

> Intensive probation means ... that initially you'll probably have to report a couple of times a week and, then, that will be gradually—be reduced; but it's more than—closer supervision than the regular probation. It's not reporting just once a month.

> I want to find out in the first couple of weeks whether you're doing what you're supposed ... to do. If you're not, ... you have three, eleven month and twenty-nine day sentences to serve.

conviction, the appellant received treatment at a mental health clinic.

**2.** The judgments do not indicate whether service of these sentences is concurrent or consecutive. The record of court proceedings, dated June 20, 1994, provides, "Concurrent or consecutive matter reserved for hearing at later date." The record of the subsequent hearing is not included in the record before this court. Nevertheless, the

The appellant's attorney indicated to the court that the appellant agreed to the modification of the terms of the plea agreement.

On October 26, 1993, following the appellant's arrest for assault, the trial court revoked the appellant's probationary status and also amended the judgments of conviction to reflect a release eligibility percentage of seventy-five percent. On the basis of events underlying the appellant's arrest for assault, the State subsequently indicted the appellant for three counts of indecent exposure. On June 20, 1994, the appellant was convicted by a jury of all three counts and received sentences of eleven (11) months and twenty-nine (29) days and release eligibility percentages of seventy-five (75) percent. These sentences were to be served consecutively to each other and to his prior sentences.[2]

On December 13, 1994, the appellant, through appointed counsel, filed petitions seeking post-conviction relief from the January 20, 1993, judgments of conviction. On the same day, the appellant also filed a motion for new trial with respect to the June 20, 1994, judgments of conviction. On January 27, 1995, the trial court conducted a hearing to determine the merits of both the appellant's petitions for post-conviction relief and the motion for new trial. The court dismissed both the petitions and the motion for new trial. In this appeal, the appellant only seeks post-conviction relief from the January 20, 1993, judgments of conviction.

With respect to his 1993 convictions, the appellant presents the following issues: (1) whether two of his pleas of guilt to indecent exposure are sufficiently supported by a factual basis; (2) whether the appellant's pleas were knowing and voluntary; (3) whether the appellant received ineffective assistance of counsel; and (4) whether consecutive service of the appellant's sentences is consistent with the Sentencing Act.[3]

appellant indicates in his brief that, in fact, consecutive sentences were imposed.

**3.** Again, the appellant is only appealing the denial of his petitions for post-conviction relief in the 1993 cases. Yet, the appellant, in his brief, attempts to contest the imposition of sentences, consecutive to each other, in the 1994 cases. Clearly, we cannot address the 1994 cases in this appeal.

At the post-conviction hearing, one of the appellant's trial attorneys, James Paul Newman, testified.[4] Newman stated that, at the time of the post-conviction hearing, he had been employed by the Public Defender's office for more than ten years and had represented "thousands" of defendants. He testified that he supervised the appellant's representation by Cindy Forte, an attorney employed by the Public Defender's office, and he actively participated in the representation.[5] Newman communicated with the appellant on numerous occasions concerning his client's cases, including discussing trial strategy. According to Newman, both he and Ms. Forte advised the appellant of the possible range of punishment should the appellant choose to proceed to trial and should he be convicted. Newman "told [the appellant] on several of the cases the chances were good of getting consecutive sentencing."

With respect to trial preparation, although he did not review the preliminary hearing tapes, Newman spoke with all the attorneys who had attended preliminary hearings on the appellant's behalf. Newman recalled that witnesses testified at the preliminary hearings and at a bond hearing, providing information concerning the cases. Newman concluded:

> There are notes in the file where Ms. Forte has talked to [the prosecutor] extensively, and I remember having a lot of informal conversations here in the courtroom concerning the case and the facts of the case. . . . Based on the Preliminary Hearings, Ms. Forte sitting through them, me talking to all the attorneys who con-

ducted the Preliminary Hearings, having the bond hearing and the benefit of the evidence that was produced there, the lengthy letters from [the appellant], I felt comfortable that we knew what the case was about.

Newman denied ever informing the appellant that he and Ms. Forte were unprepared for trial or refused to represent the appellant at trial.[6] Indeed, Newman testified:

> I determined early on that it appeared like that this was a case that [the appellant] was going to go to trial on and one that we were gonna [sic] have to . . . try. Uh—as a matter of fact, the day of the plea we had talked to [the appellant] for several hours. I had come down because I thought plea negotiations had broken down completely. [The appellant] had word sent for us to come back up, that he had reconsidered and that he, in fact, wanted to take the plea. . . . I believe he understood what he was doing. I was a little concerned about the fact that he was trading jail time, which would be less than what he might receive at trial, for the consecutive time. And that's the reason I spent so much time explaining to him that if he were violated he would be looking at a lot of time.

Newman could not recall the appellant ever complaining about his health or his accommodations during the plea negotiations.

With respect to whether the appellant voluntarily agreed to proceed with his pleas of guilty despite the court's imposition of intensive probation, the transcript of the relevant hearing reflects that Newman indicated to the court that the appellant had agreed to

---

4. The appellant has apparently experienced difficulty working with attorneys assigned to his cases. At the post-conviction hearing, the appellant's post-conviction attorney remarked that the appellant had previously been represented by five different attorneys. Newman opined that the appellant had been represented by, perhaps, as many as seven different attorneys. Newman characterized the appellant as a "very high maintenance client." Newman further testified:
[The appellant] does most of the talking and does most of the demanding and you listen and try to listen patiently. And, then, you go back and explain to him what the law is, what he's looking at, what his options are, and just leave it at that.

5. Ms. Forte was unable to testify at the post-conviction hearing. However, in response to interrogatories, she stated that she recalled very little about the appellant's case, other than her attendance at preliminary hearings.

6. Newman conceded that he did not explore the appellant's theory of a communist conspiracy. He did make some inquiries regarding the appellant's claim that he had been "framed" because he had conducted an affair with a policeman's wife, which resulted in the policeman's suicide. These inquiries proved fruitless.

the modification. At the post-conviction hearing, Newman stated:

> I would not make a statement to the court that was contrary to what my client had told me to say, especially with my client standing there, being [the appellant] who was very vocal.... [H]e is not the type to sit there and let someone say something that he says he agrees to that he doesn't agree to.

The appellant also testified at the evidentiary hearing. He alleged that, throughout plea negotiations,

> [the prosecutor] was telling Mr. Newman something each time that would cloud and clutter and throw me into a state of confusion as to what the business at hand was.... I [also] had the feeling that [Newman] was being slowly convinced that I was guilty and it didn't matter.

He asserted that, on January 8, 1993, Ms. Forte and Mr. Newman walked out of a conference with the appellant, because the appellant continued to insist upon proceeding to trial. The appellant asserted that Newman informed him that he was not prepared for trial. However, the appellant also stated that "probably Mr. Newman was doing the best he could." Additionally, he testified that, during the plea negotiations, the appellant was confined in a small, smoky room, despite an allergy to smoke and a sinus infection. The appellant stated that, in this room, he could not breath and his heart was beating rapidly. Accordingly, the appellant recounted that he "thought that [he would] just run with it, what the heck, and try to look at something positive, which is get on over and get work release." The appellant further alleged that, during the guilty plea hearing, although the appellant had numerous concerns about the plea agreement, including the apparent absence of work release, Ms. Forte instructed the appellant to "shut up." Finally, the appellant testified that, at the April 2, 1993, hearing, at which the trial court imposed intensive probation, he did not understand that he could withdraw his guilty plea.

On cross-examination, the appellant admitted that he was guilty of all the charges to which he had pled guilty. When asked if, in fact, he had been coerced by his attorneys into entering guilty pleas, he responded, "No. That's the only way you can get Post Conviction Relief. It's really the [prosecutor's] maliciousness that's the issue here.... I just thought ... take it and run with it and get on and get out and work...."

## ANALYSIS

 The appellant initially contends that there was no factual basis supporting his convictions for two counts of indecent exposure. In essence, the appellant is alleging that the trial court did not comply with Tenn. R.Crim.P. 11(f). Rule 11(f) provides:

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

However, this court has held that a lack of a sufficient factual basis to a guilty plea is not a constitutional violation which affords relief in the post-conviction setting. *Gaddis v. State*, No. 03C01–9303–CR–00064, 1993 WL 542509 (Tenn.Crim.App. at Knoxville, January 4, 1993), *perm. to appeal denied*, (Tenn. 1994).

> [A] defendant who acts in his own best interests, voluntarily and intelligently pleading guilty to a charge for which there is little factual foundation, and waiving any objection to the charge, and who later attempts to attack the plea for which he bargained, has no basis for a constitutional challenge to the conviction. He has, at best, invited error, and, at worst, attempted to manipulate the court.

*Id.* Yet, in *Gaddis*, No. 03C01–9303–CR–00064, this court also observed that the trial court's failure to establish a factual basis for the plea on the record may contribute to the totality of the circumstances reflecting an unknowing or involuntary plea. *See State v. Neal*, 810 S.W.2d 131, 135 (Tenn.1991) ("[t]he common and compelling purpose behind all of these rules is to seek to insulate guilty pleas from coercion and relevant defendant ignorance").

**556**

At the conclusion of the post-conviction hearing, the trial court entered the following findings:

[I]f there was any question about the guilt, he not only waived that by pleading guilty but he stated under oath that he was guilty, and stated that again today; so, whether those charges are proper or not, there's not any question to be reviewed in this matter. I think they were. I think the evidence cited to me and, incidentally, we had a bond hearing, and I heard some of the proof on those charges. The truth of it is that he was, indeed, guilty of those charges. . . .

The post-conviction court further concluded that the appellant entered his pleas knowingly and voluntarily. Generally, on appeal, this court is bound by the post-conviction court's findings of fact unless the evidence in the record preponderates against those findings. *Davis v. State,* 912 S.W.2d 689, 697 (Tenn. 1995). *See also Johnson v. State,* 834 S.W.2d 922, 927 (Tenn.1992). The appellant and the State have failed to include in the record before this court a transcript of the guilty plea proceeding. *See* Tenn.Code Ann. § 40–30–114(b) (1990) (if the record of the guilty plea hearing is not made a part of the petition for post-conviction relief, the transcript *must* be filed by the District Attorney General). *See also Johnson,* 834 S.W.2d at 925. Nevertheless, the record before this court establishes the knowing and voluntary entry of guilty pleas by the appellant in this case.[7]

In *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), the United States Supreme Court held, "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." In evaluating the knowing and voluntary nature of the appellant's pleas, this court must look to the totality of the circumstances. *State v. Tur-*

*ner,* 919 S.W.2d 346, 353 (Tenn.Crim.App. 1995), *perm. to appeal denied,* (Tenn.1996). *See also Chamberlain v. State,* 815 S.W.2d 534, 542 (Tenn.Crim.App.1990), *perm. to appeal denied,* (Tenn.1991). We may consider any relevant evidence in the record of the proceedings, including post-conviction proceedings. *Id.*

[A] court charged with determining whether ... pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advise from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State,* 858 S.W.2d 897, 904 (Tenn.1993).

Initially, the appellant testified at the post-conviction hearing that he was guilty of the charged offenses. Moreover, with the exception of the trial court's failure to establish a factual basis to the pleas, the appellant conceded that the trial court complied with Rule 11, *Boykin, Mackey,* and *McClintock.* Indeed, the record reflects that, at the time of his guilty pleas, the appellant was very familiar with criminal proceedings. Additionally, as we conclude later in this opinion, the appellant was represented by competent counsel. James Paul Newman, the attorney who supervised the appellant's representation, described at the post-conviction hearing his numerous consultations with the appellant concerning the appellant's cases and the plea agreement. Newman remarked that he spent "so much time" explaining to the appellant the sentence embodied in the plea agree-

7. *On direct appeal,* if a *non-constitutional error* is raised and the record does not affirmatively show substantial compliance with the mandates of Rule 11, *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), *State v. Mackey,* 553 S.W.2d 337 (Tenn.1977), and *State v. McClintock,* 732 S.W.2d 268 (Tenn.1987), the burden is upon the State to demonstrate that the error is harmless pursuant to Tenn.R.App.P. 36(b) and Tenn.R.Crim.P. 52(a). *See Neal,* 810 S.W.2d at 138–139. Logically, therefore, *in the post-conviction context,* because non-constitutional omissions are generally not cognizable, the omission does not shift the burden to the State. Thus, as in the instant case, where the appellant is only alleging a non-constitutional omission, he retains the burden of demonstrating that his pleas were not knowing and voluntary.

ment, because he was concerned about the consequences of any violation of the terms of probation. He denied ever pressuring the appellant to enter guilty pleas and stated that he was prepared to try the appellant's case. Finally, the appellant, when asked on cross-examination at the post-conviction hearing whether he had been compelled by his attorneys to enter guilty pleas, admitted that he had not been coerced and that he had accepted the plea agreement in order to obtain the earliest possible release date.[8]

 The appellant also contends that "the Court changed the conditions of [his] probation from supervised to intensive, seventy-seven (77) days after the plea was entered. This was a breach of the agreement by the State. [The appellant] had the right to set aside his plea at the time." Yet, the record reveals that the court offered the appellant the opportunity to set his guilty pleas aside and proceed to trial. Indeed, the post-conviction court found that, despite the appellant's testimony at the post-conviction hearing, "it's clear from the transcript that he did, in fact, agree to go with the intensive probation rather than withdraw his guilty plea." Again, we agree that the appellant has failed to demonstrate that his pleas were anything other than knowing and voluntary.[9]

 The record also supports the trial court's finding that appellant's counsel rendered effective assistance. As noted earlier, on appeal, this court is bound by the post-conviction court's findings of fact unless the evidence in the record preponderates against those findings. *Davis*, 912 S.W.2d at 697. *See also Black v. State*, 794 S.W.2d 752, 755 (Tenn.1990). In other words, in post-conviction proceedings, the appellant must prove the allegations in his petition by a preponder-

---

8. The appellant asserts that Ms. Forte falsely informed him that he would receive 25% credit for good behavior with respect to the five months actual confinement to which he was initially sentenced. The trial court entered the following findings concerning this allegation:

> I noted on [the "Petition to Enter Plea of Guilty"] that [the appellant] would be released on April 15, 1993. I told him that. He understood what the deal was. The point is, that on the front end he understood exactly how much additional time he was gonna serve.
>
> .∴. There was no issue of twenty-five percent good time since we specifically stated that—what his release date would be....

Ms. Forte could not recall what, if anything, she told the appellant about credit for good behavior. However, the plea agreement included in the record clearly provides for 100% service of the five months confinement and does include a notation setting the release date on April 15, 1993. The appellant's conclusory assertions are insufficient to meet his burden of proof in this postconviction proceeding. *Brown v. State*, No. 03C01–9107–CR–00233, 1992 WL 143878 (Tenn. Crim.App. at Knoxville), *perm. to appeal denied*, (Tenn.1992) (citing *McBee v. State*, 655 S.W.2d 191, 195 (Tenn.Crim.App.1983)).

9. The appellant, however, correctly asserts that the court lacked jurisdiction to amend the appellant's sentence and impose intensive probation on April 2, 1993. The judgments of conviction were entered on January 15, 1993. This court has held that "a sentencing order, including one involving probation, is a judgment which becomes final after thirty days in the same manner as other judgments in criminal cases." *State v. Moore*, 814 S.W.2d 381, 383 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1991). *See also*

*State v. Pendergrass*, 937 S.W.2d 834 (Tenn.1996) (for publication). Once the trial court loses jurisdiction, it generally has no power to amend its judgment, and a judgment beyond the jurisdiction of a court is void. *Pendergrass*, 937 S.W.2d 834. Moreover, jurisdiction to modify a final judgment cannot be grounded upon waiver or agreement by the parties. *Moore*, 814 S.W.2d at 383.

After reviewing the record, we must conclude that none of the statutory provisions extending the jurisdiction of the trial court to modify the appellant's sentence in a manner more onerous than that originally imposed are applicable in this case, including Tenn.Code Ann. § 40–35–308(b) (1990). *See Moore*, 814 S.W.2d at 383. Despite the State's effort to characterize the April 2, 1993, hearing as a probation revocation proceeding, it is clear that the appellant had not yet begun probation. Moreover, at the hearing, the appellant indicated his desire to comply with the original terms of probation set forth in the plea agreement.

Nevertheless, although the amendment to the judgment of conviction is void, this error has had virtually no impact upon the current posture of the appellant's case. The original judgment of conviction remains valid, particularly in light of our finding that the appellant's pleas of guilty were voluntary and knowing and that the appellant received the effective assistance of counsel. Additionally, the appellant's current incarceration is the result of his commission of additional offenses while on probation, actions that would have resulted in the revocation of his probation according to the original terms of his probation. Thus, the appellant has suffered no injury which can be redressed in these proceedings.

ance of the evidence. *Davis,* 912 S.W.2d at 697. Specifically, when a claim of ineffective assistance of counsel is raised, the appellant bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Butler v. State,* 789 S.W.2d 898, 899 (Tenn.1990). With respect to deficient performance, the court must decide whether or not counsel's performance was within the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn.1975). To satisfy the prejudice prong of the *Strickland* test, the appellant must show a reasonable probability that, but for counsel's ineffective performance, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Accordingly, when the appellant seeks to set aside a guilty plea on the ground of ineffective assistance of counsel, he must demonstrate a reasonable probability that, but for counsel's deficiency, he would have insisted upon proceeding to trial. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Bankston v. State,* 815 S.W.2d 213, 215 (Tenn. Crim.App.), *perm. to appeal denied,* (Tenn. 1991); *Manning v. State,* 883 S.W.2d 635, 637 (Tenn.Crim.App.1994). Again, the appellant has failed to carry his burden. In fact, as mentioned earlier, the appellant conceded at the post-conviction hearing that Newman was probably "doing the best he could."

█ Finally, with respect to the appellant's challenge to the trial court's imposition of consecutive sentences, the appellate courts of this state have consistently held that a ground predicated upon a sentence imposed by the trial court is not cognizable in a post-conviction suit unless the sentence is illegal. *Smith v. State,* No. 01C01–9306–CC–00182, 1994 WL 83380 (Tenn.Crim.App. at Nashville), *perm. to appeal denied,* (Tenn.1994) (citing *State v. Mahler,* 735 S.W.2d 226, 227–28 (Tenn.1987), and *Brooks v. State,* 756 S.W.2d 288, 291 (Tenn.Crim.App.1988)). *See also* Tenn.Code Ann. § 40–35–401 (1990) ("[t]here is no appellate review of the sentence in a post-conviction ... proceeding"). Consecutive sentencing in the instant case was not only authorized by statute, but clearly appropriate. Tenn.Code Ann. § 40–35–115(b)(2) (1990) provides that a court may order sentences to run consecutively if "[t]he defendant is an offender whose record of criminal activity is extensive." We conclude that, contrary to the appellant's assertion in his brief, the record supports the application of this factor. *See supra* n. 1. The appellant has four prior convictions, occurring over seven or eight years and involving indecent exposure. Two prior convictions involved children. Given the similar nature of the instant offenses, it is particularly appropriate that we consider this prior criminal activity. *See, e.g., State v. Haskins,* No. 01C01–9307–CC–00243, 1994 WL 168701 (Tenn.Crim.App. at Nashville, May 5, 1994). Accordingly, the only remaining considerations are whether an extended sentence "is necessary to protect the public against further criminal conduct by the defendant and [whether] consecutive sentences ... reasonably relate to the severity of the offenses committed [in this case]. *State v. Wilkerson,* 905 S.W.2d 933, 938 (Tenn.1995). *See also State v. Begley,* No. 01C01–9411–CR–00381, 1996 WL 12152 (Tenn.Crim.App. at Nashville), *perm. to appeal granted,* (Tenn.1996). The previous convictions of the appellant have apparently had little impact upon his willingness to violate the law. Indeed, while on probation for the instant offenses, the appellant committed three additional acts of indecent exposure, for which he was convicted by a jury. Finally, we believe the imposition of consecutive sentences to be commensurate with offenses reflecting the appellant's continuing propensity to expose children to his deviant impulses.

For the reasons set forth above, we affirm the post-conviction court's denial of relief.

JONES, P.J., and PEAY, J., concur.