IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 17, 2001 Session

## ANTWAN LAMAR PATTON v. STATE OF TENNESSEE

**Appeal as of Right from the Criminal Court for Davidson County**
**No. 94-A-313      Seth Norman, Judge**

---

**No. M2000-00370-CCA-R3-PC - Filed May 18, 2001**

---

A Davidson County jury convicted the petitioner of two counts of child rape.  For each of these offenses, he received a sentence of eighteen years, and the trial court ordered the sentences to be run consecutively. On direct appeal this Court modified the petitioner's sentences to sixteen and one half years each, resulting in an effective sentence of thirty-three years, but otherwise found the petitioner's claims merited no relief. Subsequently the petitioner filed a pro se post-conviction petition alleging ineffective assistance of counsel. Determining that the petitioner had raised a colorable claim, the trial court appointed counsel[1] to represent him and later conducted an evidentiary hearing on the petition. After taking the matter under advisement, the trial court filed an opinion denying the petition. From this denial the petitioner brings the instant appeal alleging that trial counsel provided ineffective assistance by inadequately advising the petitioner of the potential sentence he could receive should he elect to go to trial.[2] However, following our review of the record, we find that the trial court correctly denied the petition, and we, therefore, affirm the lower court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES, J., and THOMAS T. WOODALL, J., joined.

Ralph Newman, Nashville, Tennessee, at trial and sentencing; C. LeAnn Smith, Nashville, Tennessee, on post-conviction, for appellant, Antwan L. Patton.

---

[1] The petitioner's present counsel is actually the second attorney appointed to represent him on this post-conviction matter as the first was allowed to withdraw.

[2] Through his petition and at the evidentiary hearing thereon, the petitioner raised additional alleged errors said to rise to the level of ineffective assistance. However, the petitioner only elected to argue the aforementioned issue on appeal, and this is the only contention which will be considered in this opinion.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, District Attorney General, Pam Anderson, Assistant District Attorney, for appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

In deciding the petitioner's case on direct appeal, this Court summarized the facts as follows:

> On an evening between September 25 and 30, 1993, at approximately 5 or 6 p.m., the [twelve year old] male victim ... was playing hide-and-seek near his residence in Preston Taylor Homes, a public housing project in Nashville. The defendant approached the victim, who was hiding behind a tree, saying he had a birthday present for him. The victim recognized the defendant whose mother was a friend of the victim's mother.
> When the defendant, who was carrying a stick about one-and-one-half feet in length, grabbed his arm, the victim attempted to resist and run away. The defendant then struck the victim with the stick, producing a large bruise on his arm, and forced the victim into some bushes about fifty feet from the street. The defendant removed a roll of duct tape from his back pocket, tore off a section with his teeth, and placed it over the victim's mouth. The victim cried as the defendant anally penetrated the victim with his penis. Afterward, the defendant removed the tape, forced the victim to his knees, and required him to perform oral sex. Revulsed, the victim vomited.
> The defendant then released the victim, threatening to kill the victim and his mother if he told of the incident. When he returned home, the victim complained to his mother of rectal pain but did not inform her of the rape. The victim took some milk of magnesia and prune juice after which he experienced a bowel movement and bleeding.
> On October 11, 1993, about two weeks after the rapes, the victim received a poor report card from school and was grounded. At this point, the victim informed his mother about the defendant's assault. His mother called the victim's grandmother and then the police. Afterward, the victim made a statement to the police, spoke with social worker at the Department of Human Services, and went for an evaluation at Our Kids Clinic at Vanderbilt.
> There were inconsistencies in the victim's testimony. His recollection at trial of the sequence of the sex acts differed from his testimony at the preliminary hearing. The victim explained that he had misunderstood the questions posed to him at the preliminary hearing and was certain that the rapes occurred as he testified at trial. He also testified that the defendant had sexually assaulted him on eight other occasions in different locations. The victim acknowledged, however, that he had not told anyone of these other incidents. In fact, just three days prior to September 25, 1993,

when questioned by a doctor at Vanderbilt Hospital, the victim denied that he had ever been sexually abused.

Pamela Primm, the victim's mother, testified that in September, 1993, the victim came home complaining that his bottom hurt. She described his eyes as "kind of watery," his behavior as "kind of strange," and his gait as "kind of hopping." She recalled having given the victim some milk of magnesia and prune juice but did not ask him about his leg. She confirmed that when she grounded the victim two weeks later for a report card containing three failing grades, he first told her of the rapes.

Ms. Primm claimed that her son had been adversely affected by the incident. She testified that he would not play outside, and was just "not the same little boy anymore." She also arranged counseling for him.

Detective Harry Meek of the Metro Police Department testified that the victim showed him numerous locations where the victim claimed the other assaults had occurred. Detective Meek took photographs of these locations.

Julie Rosof of Our Kids Center at Vanderbilt, an expert trained in examination of sexually abused children, testified that she examined the victim. After learning of the victim's account of the rapes, she examined and found normal the victim's mouth and rectal area. Ms. Rosof testified that it is not unusual for small abrasions or injuries in the rectal area to heal "very, very quickly ... within 24 or 72 hours." She saw no signs of scarring. Laboratory tests for sexually transmitted diseases were negative.

Corey Dewayne Smith, thirteen years old, testified that he lived in Preston Taylor Homes. While acknowledging that he had played with the victim in the past, Smith denied playing hide-and-seek with the victim in September, 1993. He testified that he stopped playing with the victim in 1990 or 1991 because of rumors that the victim was gay.

The defendant, twenty years old at the time of trial, was eighteen in September of 1993. He testified that he left school, where he took special education classes, in the ninth grade. The defendant, who has a three-year-old child and has worked off and on since leaving school, testified that he was sometimes living with his girlfriend's aunt and sometimes at his mother's home during that time. He acknowledged knowing the victim but denied raping him.

At trial, the defendant claimed that he worked for Labor World and had worked there regularly the week before the trial. The General Manager of Labor World, however, established that the defendant had not worked at all the week before trial and had worked only one day during the preceding week. Don Black of the Davidson County Sheriff's office testified that the defendant was in jail for approximately seven days during the same time period.

The jury returned a verdict of guilty on both counts of rape of a child as charged in the indictments. At the sentencing hearing, Ms. Primm testified that the victim no longer played outside in the neighborhood and had suffered recurrent nightmares since the rapes. She stated that the victim had moved in with his grandmother to escape the environment at Preston Taylor Homes.

State v. Antwan Patton, No. 01C01-9606-CR-00241, 1997 WL 742514 at \*1-2 (Tenn. Crim. App. at Nashville, Nov. 25, 1997) (footnotes omitted).

Moving to the post-conviction hearing, the petitioner provided the only proof for his claim. At the outset the petitioner stated that he believed his IQ to be 65; that he functions on a third grade level; and that he has a tough time understanding things. While acknowledging that trial counsel had initially informed him that he could receive fifteen to twenty-five years for the crimes with which he was charged, the petitioner denied that counsel ever discussed the terms "concurrent" or "consecutive" with him. Also, the petitioner claimed that trial counsel did not tell him that, if he were sentenced to consecutive sentences, he could potentially receive fifty years if convicted. Furthermore, the petitioner stated that on the Friday before his trial, he had signed an agreement to offer a best interest plea for which he would receive six years. However, shortly after entering into the agreement the petitioner spoke by telephone with his attorney to say that he no longer wanted the offer. Explaining at the hearing his rationale for rejecting the offer, the petitioner said, "Why am I going to plead guilty for something I didn't do?" Thereafter, he added that he had believed that the most he could receive upon conviction at trial was the six years he had been offered and, thus, that he had not been aware that he could be sentenced to serve up to fifty years. He further alleged that he did not come to this realization until the trial judge had sentenced him. In response to a question on direct examination, the petitioner affirmed that he would not have taken his case to trial had trial counsel explained to him "that the six years was no longer an option." He then stated, "I wouldn't a'went to trial if I knew that I was going to get the time I have now."

Subsequent to the petitioner's testimony, the prosecution called the petitioner's trial counsel Ralph Newman as its sole witness. This attorney stated that he had been with the public defender's office since 1989. Further describing his experience with the practice of criminal law, Newman asserted that he had handled at least eight hundred felony cases and had tried twenty to thirty cases before a jury since moving to the criminal court level in 1991. He added that some of these cases had been class A felonies. Specifically with regard to the petitioner, trial counsel averred that on multiple occasions he had explained to the petitioner that the petitioner was charged with A felonies and, therefore, faced fifteen to twenty-five years on each count. In addition, he advised the petitioner that he would not be eligible for parole and that the trial judge could order these sentences to be served consecutively or concurrently. Newman testified that he had given this advice to the petitioner on the Friday before trial in explaining the above-referenced six year best interest plea to attempted aggravated sexual battery. Realizing that the petitioner's intelligence level was low, trial counsel talked with the petitioner "at great length" concerning the plea petition explaining the consequences and alternatives. The attorney testified that at the conclusion of this discussion, the petitioner had indicated that he understood the range of punishment and that his sentences could be ordered to be served consecutively.[3] However, though the petitioner signed the plea agreement, later that same day the petitioner informed counsel that he wanted his case to be tried and that such was

---

[3] During cross-examination trial counsel stated that he could not recall the exact method that he had used in explaining consecutive sentencing to the petitioner but that he had covered this concept with his client.

-4-

his final decision.[4] Counsel further candidly acknowledged that he had not tried to change the petitioner's mind as it seemed that the petitioner had decided that he was not interested in pleading to any charge. Relatedly, trial counsel admitted on cross-examination that he may not have told the petitioner in that telephone conversation that the petitioner would again be facing up to fifty years. Nevertheless, trial counsel was clear that he had explained the limits of exposure on occasions before and after the rejection of the plea and that, prior to the petitioner's signing the plea, he had advised the petitioner that "if [the petitioner] rejected the plea agreement then he'd be facing trial on the original counts of the indictment."

Having heard the proof, the trial court subsequently denied the petitioner post-conviction relief. Within its finding, the lower court stated that "[t]he petitioner was advised of the nature of the punishment and that the sentences could be consecutive." Through this appeal the petitioner contests the trial court's ruling and maintains that counsel provided him ineffective assistance.

## POST-CONVICTION STANDARD OF REVIEW

In analyzing the issue raised, we first note that a petitioner bringing a post-conviction petition bears the burden of proving the allegations asserted in the petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). Moreover, the trial court's findings of fact are conclusive on appeal unless the evidence preponderates against the judgment. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

## INEFFECTIVE ASSISTANCE OF COUNSEL
### A. Standard of Review

Beyond this we are to observe the following standard of review applied in cases alleging ineffective assistance of counsel. When a petitioner seeks post-conviction relief on the basis of ineffective assistance, the petitioner must prove "that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial." Powers v. State, 942 S.W.2d 551, 558 (Tenn.Crim.App. 1996). To satisfy the deficient performance prong of this test, the petitioner must establish that the service rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Furthermore, to demonstrate the prejudice required, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). As a matter of fact, "a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Id.

### B. Allegation of Failure to Advise of Sentencing Exposure

---

[4] Actually, it was the petitioner's mother who had called counsel quite upset that afternoon. Though counsel would not speak with her in that state, he had asked to talk with the petitioner, who then indicated that he was no longer interested in pleading. On cross-examination post-conviction counsel asked Newman if he had ever discussed the petitioner's risk of exposure with the petitioner's mother since the petitioner had limited mental abilities, and trial counsel indicated that he had not.

In asserting his position, the petitioner states that counsel failed to advise him of the potential sentence that he could receive if convicted as charged and that he would not have taken the matter to trial had he received such advice.[5] However, after reviewing the record, we do not find that he has proven such by clear and convincing evidence. Though at one point he claims that he would not have pled had he received the allegedly omitted advice, his more accurate statement may have been the one that followed: "I wouldn't a' went to trial if I knew that I was going to get the time I have now." In contrast to the petitioner's claims, his trial counsel testified that he had advised the petitioner on more than one occasion of the full potential sentence that the petitioner could receive if convicted as charged. Furthermore, counsel indicated that he had explained that this would be the sentence that the petitioner risked receiving if the petitioner declined the State's six year offer. Additionally, trial counsel recounted that in rejecting the offer, the petitioner had indicated that he wanted to go to trial and that such constituted his final decision. Even in the post-conviction hearing, the petitioner stated, "Why am I going to plead guilty for something I didn't do?" in response to a question from his current counsel concerning his reason for rejecting the plea agreement.

Applying these facts to the above-outlined two prong test for determining the effectiveness of counsel, we conclude that the petitioner has failed to prove either deficient performance or that there is a reasonable probability that the outcome of the proceeding would have been different had he received the allegedly missing advice. Again, as aforementioned, the trial court found that "[t]he petitioner was advised of the nature of the punishment and that the sentences could be consecutive." In denying the petition, the trial court further found that counsel had not been ineffective. The evidence does not preponderate against these determinations and, thus, this issue lacks merit.

## CONCLUSION

For the foregoing reasons we find that the petitioner's claim entitles him to no relief. Accordingly, the judgment of the trial court is AFFIRMED.

 

 

_____
JERRY L. SMITH, JUDGE

---

[5] Through his brief the petitioner seemingly adds a sub-issue not clearly presented to the lower court. The petitioner goes beyond stating that he had not been informed of the potential aggregate sentence that he might receive should he refuse the six year offer to asserting that trial counsel had an obligation to attempt to persuade him to accept the plea. (In support of this claim, the petitioner cites caselaw such as State v. McClennon, 669 S.W.2d 705, 707 (Tenn. Crim. App. 1984).) However, the lower court did not have an opportunity to rule on this issue; thus, it is not properly before this Court. See Tenn. R. App. P 36(a). Furthermore, while the evidence indicates that trial counsel did not seek to talk the petitioner out of the petitioner's "final decision," post-conviction counsel did not elicit any proof relative to persuasion trial counsel may or may not have utilized prior to the petitioner's having agreed to the State's offer. As such, trial counsel may well have engaged in such persuasion earlier but allowed the petitioner to make his own decision to go to trial, as was his right.