IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 10, 2001

### KEITH U. TATE v. STATE OF TENNESSEE

**Post-Conviction Appeal from the Criminal Court for Shelby County**
**No. P18964     Arthur T. Bennett, Judge**

---

**No. W1999-01798-CCA-R3-PC - Filed April 2, 2002**

---

The petitioner, Keith U. Tate, was tried with his co-defendant/brother for aggravated rape. The petitioner was convicted of having committed aggravated sexual battery. The trial court sentenced him to serve seventeen years as a Range II offender.  The petitioner filed a motion for new trial, which the trial court denied.  The petitioner appealed the trial court's denial of his motion to this Court, and we affirmed the trial court's ruling.  See State v. Keith U. Tate, No. 02C01-9406-CR-00132, 1997 Tenn. Crim. App. LEXIS 18, at *1 (Tenn. Crim. App. at Jackson, Jan. 19, 1997). Subsequently, the petitioner filed for post-conviction relief, alleging that he received ineffective assistance of counsel at both the trial and appellate levels.  After conducting a hearing, the post-conviction court dismissed the petition, and the petitioner now brings this appeal challenging that dismissal.  After reviewing the record, we find that the petitioner has failed to prove by clear and convincing evidence that he received ineffective assistance of counsel.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Jeffery S. Glatstein, Memphis, Tennessee, for appellant, Keith U. Tate.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General, William L. Gibbons, District Attorney General; and Johnnie McFarland, Assistant District Attorney, for appellee, State of Tennessee.

### OPINION

#### Facts

On direct appeal, this Court summarized the facts of this case as follows:

> Shortly after midnight on June 4, 1992, the victim, Deborah Paige, went with
> the defendants to the residence of Steven Watkins.  She said the defendants had

offered her crack cocaine. Upon their arrival, the victim smoked some of the cocaine she acquired in exchange for sex. She performed sex (the victim claimed no recollection of what, if any, consensual sex she had performed) with the defendant Willie Tate; when asked whether he had forced sex, the victim answered, "Not then." There was, however, an apparent disagreement about whether the victim had fulfilled her part of the bargain. She testified that after her encounter with Willie Tate, the two defendants kicked her, smacked her, and then raped her. The victim described her vagina as having been penetrated by one of the defendant's hands and fingers. She remembered that one of the defendants had a knife, which she identified at trial, that had caused a small cut to her hand. She claimed that she was required against her will to have sexual intercourse on the kitchen floor with the defendant, Keith Tate. She testified that she was allowed to leave the Watkins' residence at approximately 2:00 A.M. and then ran across the street to have neighbors contact the police.

The victim recalled at trial that "Keith and Willie" struck her, "hollering at me, fussing, telling me to take my clothes off, kicking me." She identified the defendant Willie Tate as having kicked her. On cross-examination by defense counsel for Keith Tate, the victim reiterated that she had agreed to have sex in exchange for cocaine; she acknowledged having testified at the preliminary hearing that she had consented to have oral sex with the Tates. The victim admitted being upset by the fact that a video tape had been taken of the incident. The victim identified a video tape of the incident taken by Watkins, who was present during the entire course of events. On cross-examination, the victim acknowledged that initially she told officers that she did not want to prosecute the defendants and had signed a document to that effect.

On re-direct examination by the state, the victim testified that one of the men "spread my legs open while the other one got on top of me." She testified that when she told them to stop, "they started kicking me and dragged me through the house." She said, "Keith got on me" and "they throwed [sic] me down and that's when the raping occurred."

Steven Watkins, a witness for the state, testified that shortly after the victim and the defendants arrived at his residence, the victim and Willie Tate went into the guest bedroom; during that time, he talked with Keith Tate. Watkins stated that eventually the victim came out of the bedroom without any clothes on; the defendant Willie Tate complained that "he wasn't satisfied" and that "she didn't go through with the deal":

> I guess he was real upset that he wasn't satisfied and Ms. Paige then . . . made the statement that they told her they would give her two rocks, one before she did both of them and one after. And she at that

time wanted--she had done whatever she was going to do to Mr. [Willie] Tate and she wanted her other rock, and they told her that wasn't the deal that she had made. She would supposedly do both of them and then after she completed both of them, she would receive her second rock . . . . At this point . . . Keith Tate was ready for his end of the bargain. She was not willing to participate any further at that point, and . . . that's when everything went wrong . . . I remember [Keith] walking over, smacking her up beside the head. She . . . start[ed] to run away . . . and they cornered her off in the kitchen.

Watkins testified that the Tates beat her and kicked her until the victim fell to the floor. He said that Keith Tate had sexual intercourse with the victim while "she was screaming and hollering 'no'"; meanwhile, Willie Tate was "holding her down." Watkins specifically recalled that the defendant Keith Tate touched the vaginal area of the victim. Watkins denied ever seeing a knife. Watkins admitted, however, that the knife the victim identified came from the kitchen of his residence.

Watkins, who had originally been charged with aggravated rape, entered into a plea agreement with the state on the promise of a reduced charge. The agreement was conditioned upon his testimony at the trial of the defendants. No plea had been made, however, at the time of this trial. Watkins testified that he videotaped the incident. The tape was placed into evidence and played for the jury.

Officer Garland Shull of the Memphis Police Department saw the victim at about 2:10 A.M.; she was missing some clothing, was crying, and obviously upset. Officer Shull stated that the victim could "barely talk" and was "gasping for air," claiming that she had been raped; he noticed some small punctures and a cut on the victim's hand near the thumb.

Officer Dana Stine took a photograph of a knife found in an open drawer; it had a ten-inch blade. She stated that the drawer was open when she arrived at the scene. She also photographed a cut on the victim's right hand.

Id. at *2-*6. At the conclusion of proof, as aforementioned, the jury convicted the petitioner of aggravated sexual battery. In his unsuccessful direct appeal, the petitioner challenged the sufficiency of the evidence to support his verdict of guilt. See id. Through this post-conviction appeal, the petitioner alleged that he received ineffective assistance of counsel from his trial attorney. Specifically, he alleges that he received ineffective assistance of counsel on the basis that his trial counsel failed to: (1) adequately investigate his case; (2) request a hearing to determine which of the petitioner's convictions would be admissible for impeachment purposes if he chose to testify; and (3) bring up the issue of the victim's recanted testimony in his motion for new trial, so as to preserve the issue on appeal.

## Post-Conviction Standard of Review

In analyzing the issue raised, we first note that a petitioner bringing a post-conviction petition for relief bears the burden of proving the allegations asserted in the petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks, 983 S.W.2d at 245 (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Furthermore, the appellate court is bound by the trial court's findings of fact, unless the record preponderates against those findings. Id. at 245.

## Effectiveness of Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984).

"Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). "Moreover, on appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "The burden is on the petitioner to show that the evidence preponderated against those findings." Id.

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. Id. at 347. This Court may not second-guess a reasonably based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. Id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

## Adequacy of Pre-Trial Investigation

The petitioner argues that if his trial counsel had spent adequate time speaking with him before trial, counsel would have learned that the victim in this case was periodically employed as a prostitute, selling sexual favors for drugs. Thus, counsel could have presented this information to the jury, thereby casting doubt on the victim's credibility. However, at the post-conviction hearing, trial counsel testified that he had adequately investigated the case. He spent the entire week

prior to trial preparing for the petitioner's case and thoroughly investigated the victim's background and criminal record.

Moreover, the petitioner did not respond to counsel's attempts to contact him before the petitioner's original trial date, thus forcing counsel to seek a continuance. After counsel successfully sought a continuance, counsel and the petitioner viewed the video-taped recording of the alleged rape. Due to the extremely incriminating nature of this tape, counsel sought to suppress it. After his motion was denied, counsel made a strategical decision not to attack the victim's credibility by questioning her about whether she had ever prostituted herself. We find that this was a reasonable trial strategy made after adequate preparation, as counsel reasonably believed that to attack this witness would have victimized her to a greater extent, thus making the jurors more likely to condemn the petitioner. Accordingly, we find that counsel did not perform deficiently by failing to question the victim about her former acts of prostitution.

### Counsel's Failure to Request a Hearing to Determine the Admissibility of the Petitioner's Prior Convictions

The petitioner contends that his trial counsel provided ineffective assistance because he advised the petitioner not to testify, but failed to request a pre-trial hearing to determine which of the defendant's prior convictions would be admissible against him for impeachment purposes if he did choose to testify at trial. The petitioner contends that if such a hearing had been conducted, he would have been fully advised of the consequences of his choice to testify and therefore could have made a knowledgeable decision about whether or not to waive his right to testify. However, as the post-conviction court noted, the only proof in support of this claim is the petitioner's own testimony. The petitioner's post-conviction counsel failed to question the petitioner's trial counsel on this matter, and in his brief, the petitioner fails to cite to the record or to any authority in support of his claim. See Tenn. Crim. App. R. 10(b). Thus, the petitioner has failed to meet his burden of proving his claim by clear and convincing evidence.

### Failure to Include the Victim's Recanted Testimony in the Motion for New Trial

The petitioner alleges that his trial counsel was deficient in failing to raise the issue that the victim recanted her testimony in an affidavit made after the petitioner's trial in the petitioner's motion for new trial. Therefore, the issue was not properly reserved for appeal. However, trial counsel testified at the post-conviction hearing that he was unaware of such an affidavit and that if he had been aware of the affidavit, he would have included that information in the motion for new trial, as he included every conceivable basis for appeal in his motion for new trial. Moreover, the victim did not testify at the post-conviction hearing, nor was her affidavit introduced at the post-conviction proceeding. Accordingly, we find that the petitioner has failed to meet his burden of proving by clear and convincing evidence that his trial counsel provided ineffective assistance of counsel by failing to raise this issue in the motion for new trial. See, e.g., Ronald Bradford Waller v. State, No. E1999-02034-CCA-R3-PC, 2000 Tenn. Crim. App. LEXIS 588, at *73 (Tenn. Crim. App. at Knoxville, July 18, 2000) (holding that if a petitioner alleges that counsel was ineffective by failing to present a witness and the petitioner does not present that individual to testify at the post-

conviction hearing, the petitioner has failed to meet his burden of proving his allegation by clear and convincing evidence).

## **Conclusion**

For the foregoing reasons, we find that none of the petitioner's allegations merit relief. Accordingly, the judgment of the post-conviction court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE