# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### April 13, 2004 Session

## MICHAEL R. LEWIS v. STATE OF TENNESSEE

### Appeal from the Circuit Court for Lauderdale County
### No. 7127     Joseph H. Walker, III, Judge

---

### No. W2003-01935-CCA-R3-PC  - Filed June 28, 2004

---

The petitioner, Michael R. Lewis, appeals the Lauderdale County Circuit Court's dismissal of his petition for post-conviction relief. On appeal, he claims that ineffectiveness of trial counsel resulted in an invalid, 2001 jury conviction of reckless aggravated assault and that post-conviction relief from the conviction is warranted. Because the record supports the post-conviction court's findings and conclusion, we affirm.

### Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

William Dan Douglas, Jr., Ripley, Tennessee, for the Appellant, Michael R. Lewis.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On direct appeal this court affirmed the petitioner's conviction. *See State v. Michael Lewis*, No. W2001-03121-CCA-R3-CD (Tenn. Crim. App., Jackson, Mar. 26, 2003). This court's opinion on direct appeal provides a brief explication of the facts of the case:

> The defendant and the victim were inmates at West Tennessee State Penitentiary. Unit Six is the maximum security unit, which contains four "pods" or housing areas. Inmates in maximum security who do not have jobs are required to remain in their cells twenty-three hours a day and are prohibited from contacting other inmates. When an inmate is out of his cell, he must wear leg restraints and handcuffs.

Kevin McWilliams was a co-defendant and former correctional officer at the prison who pled guilty to charges arising from these events. He testified that on December 15, 2000, co-defendant William Lynn Webb, who was tried along with the defendant, requested McWilliams' presence at B-Pod. When he arrived, Webb asked him if he had experienced problems with two inmates arguing, and McWilliams did not respond. Donald Phillips, the victim, returned to B-Pod where his cell was located from the laundry room where he had been working. McWilliams stated that Webb instructed him to remove Phillips' restraints and to retrieve the defendant from his cell. Webb told McWilliams he wanted to put the two inmates together because he was tired of hearing them argue.

McWilliams testified that upon removing Phillips' restraints, he had Phillips strip down to his boxer shorts and socks. He stated he did not observe a weapon on Phillips. Phillips then entered a room, and McWilliams went upstairs to retrieve the defendant from his cell. McWilliams stated he searched the defendant visually and rectally and was "pretty sure" the defendant did not have a weapon.

McWilliams then permitted the defendant to exit his cell without wearing restraints. McWilliams testified the defendant walked to the edge of the stairs, ran down the stairs and into the room where Phillips was located, and slammed the door. The defendant and Phillips then began fighting. Phillips began bleeding and yelled that the defendant had a "shank." McWilliams stated he and Webb entered the room and separated the inmates.

McWilliams testified he and Webb escorted Phillips to the prison nurse for treatment. McWilliams stated he observed injuries to Phillips' back and head. He further stated Phillips was bleeding badly from an injury to his back and opined Phillips' injuries were caused by a shank, a homemade knife. McWilliams stated that although he never saw a weapon, a shank can be hidden in the palm of a hand or in a person's hair.

McWilliams testified Webb prepared a statement, which they both signed. According to the statement, Phillips was injured when he fell down the stairs. McWilliams stated Webb informed him that if they stated Phillips fell down the stairs, they would not be punished. Webb also instructed Phillips to tell the nurse he fell down the stairs, and Phillips complied. McWilliams testified that although

both inmates agreed to a fist fight, Phillips never agreed to being attacked by a shank.

Carolyn Tatum, the personnel manager at the prison, testified Webb told her that the two inmates argued for the majority of the day, and that McWilliams wanted to allow the two inmates to fight. Webb told her that he escorted one inmate to a room, while McWilliams escorted the other inmate. Tatum stated Webb informed her that during the fight, one inmate produced a shank, which the officers did not know he had, and stabbed the other inmate several times. She testified that when she asked Webb what he had done with the shank, he replied, "Well, don't worry. It's not in the building."

Kathy Privett, an LPN at the prison, testified that on December 15th, between 5:30 p.m. and 6:00 p.m., an officer informed her someone had been injured. She stated she examined Phillips, who was bleeding "rather profusely" from his back. Nurse Privett stated she prepared an incident traumatic injury report, in which she indicated that Phillips had a small, semicircular cut on his neck, several cuts on his back, a cut on his arm, and a cut on his head. One of the cuts on Phillips' back was approximately one centimeter deep with skin and flesh missing. Nurse Privett testified Phillips informed her that he fell down the stairs; however, he showed no signs of bruising. Phillips was then sent to a hospital and returned to the prison later that night.

Cheryl Manns, the custodian of medical records at Lauderdale County Baptist Memorial Hospital, testified Phillips had cuts on his right shoulder, his neck, and his left shoulder blade, and a wound on his back, which required staples.

Frederick Zonge, an inmate, testified that his cell was located in Unit Six. While Phillips, who worked in the laundry room, was passing bags of laundry to each cell, the defendant discovered Phillips did not fold his clothes. Zonge stated that in the penitentiary inmates who want their clothes folded must give the laundry worker "a little something" in order for him to fold them. The defendant was angered by the fact that Phillips folded Zonge's clothes, but did not fold his clothes. Zonge stated the defendant believed this to be a racial issue because Phillips was an "Aryan want-to-be," who claimed to be affiliated with the White Aryan Resistance.

Zonge testified Phillips and the defendant argued and cursed at each other. Phillips then challenged the defendant to a fight, and the defendant agreed. The defendant told Phillips to persuade Webb to allow them to "fight it out." When Zonge asked Webb if he would permit the inmates to fight, Webb stated he would likely allow it. A short time later, Zonge observed Webb strip search Phillips, and Zonge did not observe a weapon in Phillips' possession. After searching Phillips, Webb yelled at McWilliams, who was standing near the defendant's cell, that he did not find anything. McWilliams replied, "I've got it covered," and opened the defendant's cell door. Zonge testified the defendant ran down the stairs and into the room before Webb had a chance to stop him. The defendant closed the door; he and Phillips fought; and during the fight, Phillips began bleeding "like a stuck hog." Zonge stated that upon viewing the blood, Webb yelled, "He's got a knife," entered the room, and broke up the fight.

*Id.*, slip op. at 2-3.

The post-conviction court conducted a hearing. The petitioner's elbow counsel at trial testified that he met with the petitioner four or five times. Prior to trial, the petitioner agreed that he had acquired the prior convictions listed by the state and understood that he qualified as a Range II multiple offender. Counsel was excused from remaining in the courtroom during the trial court's instructing the jury; however, elbow counsel did attend the sentencing hearing and served as the petitioner's appointed counsel on direct appeal. He testified that, in reviewing the case for appeal, he rejected raising the claim that the victim was an accomplice whose testimony must be corroborated because he had opined that, even if the victim were an accomplice, the evidence at trial contained corroboration. He agreed that at the petitioner's sentencing hearing, he opined to the trial court that the petitioner qualified as a multiple offender, based upon two prior felony offenses that were committed on different dates.

The petitioner testified in the evidentiary hearing that his elbow counsel-appellate counsel did not believe the issues relative to the victim's status as an accomplice were worthwhile for appeal. He stated his belief that the jury would have viewed the evidence in a different light had they been instructed that the victim was an accomplice. He testified that, during sentencing, the court erroneously believed that his prior Class E felony conviction was a Class D felony; counsel failed to raise that issue on appeal. He posited that the mistake resulted in the use of a higher sentencing classification.

The post-conviction court entered an order in which it found that the petitioner had failed to establish either deficient performance of appellate counsel or prejudice from counsel's appellate representation of him. Specifically with regard to the claim that the petitioner did not qualify as a multiple offender, the court found that the petitioner's prior felonies consisted of a Class

B robbery and a Class E theft. In the present case, the petitioner was convicted of a Class D offense. The post-conviction court noted that according to Tennessee Code Annotated section 40-35-106(a), the petitioner qualified as a multiple offender. *See* Tenn. Code Ann. § 40-35-106(a) (2003) (defendant qualifies as multiple offender after acquiring a minimum of two prior felony convictions "within the conviction class, a higher class, or within the next two (2) lower conviction classes" of the conviction class being currently sentenced).

On appeal, the petitioner claims that appellate counsel deficiently performed in failing to raise the issues of the trial court failing to instruct the jury that the victim was an accomplice and of the offender classification for sentencing purposes. Because the record supports the post-conviction court's determinations, we affirm the denial of post-conviction relief.

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). On appeal, the appellate court accords to the trial court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

When a post-conviction court denies a petitioner's claim of ineffective assistance of counsel, this court, on appeal, must determine whether the evidence preponderates against a post-conviction court's findings (1) that counsel's performance was within the range of competence demanded of attorneys in criminal cases, *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and/or (2) that any deficient performance did not prejudice the petitioner, *Strickland v. Washington*, 466 U.S. 668, 687-79, 104 S. Ct. 2052, 2064-2069 (1984). *See also Powers v. State*, 942 S.W.2d 551, 557 , 466 (Tenn. Crim. App. 1996). Courts need not address these components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. *Henley*, 960 S.W.2d at 580.

In evaluating counsel's performance, this court should not examine every allegedly deficient act or omission in isolation, but rather we view the performance in the context of the case as a whole. *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The primary concern of the court should be the fundamental fairness of the proceeding of which the result is being challenged. *Id.* Therefore, this court should not second-guess tactical and strategic decisions by defense counsel. *Henley*, 960 S.W.2d at 579. Instead, this court must reconstruct the circumstances of counsel's challenged conduct and evaluate the conduct from counsel's perspective at the time. *Id.*; *see also Irick v. State*, 973 S.W.2d 643, 652 (Tenn. Crim. App. 1998).

Even if the petitioner establishes that counsel's performance was not within the requisite range of competence, he must also demonstrate a reasonable probability that the result of the proceeding would have been different but for the defective performance of counsel. *Henley*, 960 S.W.2d at 580. A court must

"consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated trivial effect. . . ."

*Henley*, 960 S.W.2d at 580 (quoting *Strickland*, 466 U.S. at 696-97, 104 S. Ct. at 2069).

We agree with the post-conviction court that the petitioner failed to carry his burden of establishing his claims of ineffective assistance of appellate counsel by clear and convincing evidence. Although the petitioner represented himself during the trial, counsel was appointed to represent him on appeal. It is appellate counsel's responsibility to determine the issues to present on appeal. *State v. Matson*, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986) (citing *State v. Swanson*, 680 S.W.2d 487, 491 (Tenn. Crim. App. 1984)). This responsibility addresses itself to the professional judgment and sound discretion of appellate counsel, *Porterfield v. State*, 897 S.W.2d 672, 678 (Tenn. 1995), and neither the state nor federal constitution requires that every conceivable issue be raised on appeal, *Campbell v. State*, 904 S.W.2d 594, 597 (Tenn. 1995). The determination of which issues to raise is a tactical or strategic choice. *Id.* The petitioner failed to demonstrate how counsel abused his discretion in failing to present either the victim/accomplice-instruction issue or the offender classification issue on appeal.

The petitioner did not present the jury instructions as evidence in his post-conviction proceeding, and we are at a loss to know how the jury was instructed on the issues of accomplice definition and corroboration. Appellate counsel testified that he reviewed the instructions and found no instruction issues worthy of appellate presentation. Additionally, the petitioner failed to demonstrate how or why he was prejudiced by the claimed failure to raise instruction issues on appeal.

The same is true with respect to the failure to challenge in the sentencing hearing or on appeal the petitioner's classification as a Range II multiple offender. The petitioner appears to be under the mistaken belief that had the trial court discerned that his prior theft conviction was of a Class E felony, he would not have qualified as a multiple offender. However, the prior Class E felony conviction clearly qualified as one of the two prior convictions needed for Range II placement. It occupies an offense class less than two classes below reckless aggravated assault, the Class D offense for which the petitioner had been convicted and was being sentenced. Thus, we see neither deficient performance nor prejudice in counsel's failure to raise this issue.

Discerning no error, we affirm the denial of post-conviction relief.

_____
JAMES CURWOOD WITT, JR., JUDGE