# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 25, 2001

## KEVIN TAYLOR v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 95-C-1907     Seth Norman, Judge**

---

**No. M2000-01414-CCA-R3-PC - Filed August 17, 2001**

---

A jury found the petitioner guilty of felony murder and attempted especially aggravated robbery. For these offenses he received sentences of life and ten years respectively, which were set to run concurrently. The petitioner unsuccessfully pursued a direct appeal. See State v. Kevin Taylor, No. 01C01-9707-CR-00263, 1998 WL 849324 at *1 (Tenn. Crim. App. at Nashville, Dec. 9, 1998). Following his unsuccessful direct appeal, the petitioner then filed for post-conviction relief. He was subsequently appointed counsel, and this attorney filed a "Supplemental Petition for Post-Conviction Relief" alleging ineffective assistance of counsel and the deprivation of the petitioner's right to due process. Following an evidentiary hearing on these matters, the trial court found that the petition did not merit relief. The petitioner now appeals this denial maintaining that his trial counsel provided ineffective assistance by failing to subpoena and introduce alleged telephone records; to interview and/or call certain potential witnesses; and to properly investigate and cross-examine two State witnesses.[1] After reviewing the record and applicable case law, we find that these claims lack merit and, therefore, affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

William Griffin, Nashville, Tennessee, at trial and sentencing; C. LeAnn Smith, Nashville, Tennessee, on post-conviction for appellant, Kevin Taylor.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Kimberly Haas, Assistant District Attorney, for appellee, State of Tennessee.

---

[1] In both his original and amended post-conviction petitions, the petitioner raised allegations related to his jury instructions. However, his brief (somewhat understandably) contains no argument, authority, or related citations to the record on these matters. We, thus, conclude that these concerns have been waived pursuant to Rule 10(b) of the Court of Criminal Appeals of Tennessee.

# OPINION

## Factual Background

In deciding the petitioner's case on direct appeal, this Court summarized the facts as follows:

On December 26, 1994, the 20-year old victim, Joshua Sabine, drove to Nashville with James DeMoss, Rex Clayton and 15-year old Brian Binkley. The victim was driving, and Binkley was in the front passenger seat. DeMoss and Clayton were in the rear seat. The victim intended to purchase some wheel rims in Nashville.

The victim drove near a housing project in West Nashville where Cordell Sykes, the co-defendant, asked the victim if he had come for the rims. Sykes requested that they come back in approximately 30 minutes.

Upon their return Sykes approached the driver's door and advised the victim that he was unable to get the wheel rims. The defendant approached the passenger door and endeavored to sell drugs to the car occupants. Binkley advised him they were not interested in purchasing drugs, and the defendant walked around to the driver's door. Sykes then reached into the vehicle to place the gear shift in "park" and struggled with the victim. At that time another person began shooting into the vehicle. Binkley testified that both of Sykes' hands were inside the vehicle at the time of the shooting, and Sykes did not have a weapon.

Regina Tyson and Tara Williams were together at the scene at the time of the shooting. Tyson testified she observed the defendant and Corey Gooch walk by her. The defendant took Gooch's baseball cap, placed it upon his head and lowered it just above his eyebrows. The defendant also slid a gun into his black leather jacket and stated he was "going to show them how to do a jack move." She explained that "jack move" means robbing someone.

Tyson further testified that both Sykes and the defendant were at the Blazer when she heard gunshots. She then observed Sykes flee while the defendant simply walked across the street, got in his car and drove away. The only person she saw with a gun that night was the defendant.

Corey Gooch testified that he was with the defendant on the night in question. He observed the defendant at the vehicle and saw Sykes on the driver's side struggling with the driver. He also observed the defendant at the vehicle when he heard the shots but was unable to determine who actually fired the shots. Gooch saw the defendant later that evening, and the defendant stated there was a radio in the vehicle but things "didn't work out." Gooch assumed the defendant was trying to get the radio.

The victim was shot in the hail of gunfire. Binkley grabbed the steering wheel, pushed the accelerator and sped from the scene. The parties drove to a convenience store and called 9-1-1. The victim subsequently died from the gunshot wounds.

The forensic pathologist testified that the victim had three gunshot wounds; namely, one to the left part of the back, one to the back of the left hand and one to the upper left arm. Since the back wound had "stippling," that shot was fired from a distance of less than three feet.

The defendant was arrested several months after the incident. In his initial statement to the police, he stated he was across the street when the shooting began. After further interrogation, he admitted approaching the passenger side trying to sell drugs and then going around to the driver's side where he stood beside Sykes. He told the officers that Sykes was the person who shot the victim. The defendant denied to the officers that he was wearing a black leather jacket. This was contrary to the trial testimony of Binkley, Tyson and Gooch.

The defense offered no evidence at trial.

Id. at *1-2.

Through the post-conviction evidentiary hearing, proof was offered by the petitioner, Starlene Johnson,[2] and the petitioner's trial counsel. While more detail relative to the specific allegations will be provided in the following analysis, essentially the petitioner testified concerning his contacts with trial counsel in preparation for and during the trial; Starlene Johnson recounted that she had been talking with the petitioner on a pay phone at the time of the shooting; and trial counsel detailed his activities related to preparing for and conducting the trial.[3] After hearing this evidence, the trial court denied the petitioner post-conviction relief as aforementioned.

By way of this appeal, the petitioner maintains that he received ineffective assistance of trial counsel. However, because the petitioner's claim does not merit relief; we affirm the lower court's denial of his post-conviction petition.

## Post-Conviction Standard of Review

In analyzing the issue raised, we first note that a petitioner bringing a post-conviction petition bears the burden of proving the allegations asserted in the petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). Moreover, the trial court's findings of fact are conclusive on appeal unless the evidence preponderates against the judgment. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

---

[2] By the time of the post-conviction hearing, this witness' name had become Starlene Johnson Woodland. However, since she is most frequently referred to throughout the transcript as simply Starlene Johnson, we will use that name for the sake of clarity.

[3] In addition, trial counsel noted that he had been engaged in the practice of law for well over twenty years at the time of the petitioner's trial. He further explained that his work had been fairly evenly divided between juvenile delinquency and criminal cases; however, his testimony was somewhat confusing concerning whether he had conducted a jury trial of a murder charge before handling the petitioner's case. In any event, trial counsel had sought to augment the knowledge brought to bear on this trial by associating an attorney with more significant murder trial experience to assist him.

**Ineffective Assistance of Counsel**
**A. Standard of Review**

The following standard of review applies in cases alleging ineffective assistance of counsel. When a petitioner seeks post-conviction relief on the basis of ineffective assistance, the petitioner must prove "that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial." Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). To satisfy the deficient performance prong of this test, the petitioner must establish that the service rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Furthermore, to demonstrate the prejudice required, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). As a matter of fact, "a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Id.

**B. Failure to Call Starlene Johnson as a Witness and to Introduce Telephone Records**

Within the petitioner's ineffective assistance of counsel claim, he contends that his trial attorney erred by not interviewing and/or calling as a trial witness Starlene Johnson and by not acquiring the telephone records of a pay phone in the area of the shooting. He asserts that this witness' testimony and these records could have been used to show that he had been on the pay phone speaking with Johnson at the time of the murder and, thus, could not have committed the crime.

As above-noted, Starlene Johnson testified at the post-conviction hearing. According to the proof she was a friend of the petitioner's around the time of the murder, and she recounted that the petitioner had been on a pay phone talking to her when the shots had been fired. She stated that she had heard the latter and then the petitioner had dropped the phone. While she claimed to have thought that the petitioner had been shot, she admitted that she had not called 911 for assistance.

In addition, Johnson described her contact with the petitioner's trial attorney. Apparently, counsel had spoken with her by phone before trial. At that time she told the petitioner's trial attorney that she had been on the telephone with the petitioner when the offense had occurred but did not mention hearing any shots in the background. During the post-conviction hearing Johnson indicated that she would have told the attorney about the shots; however, he had not asked. She also attempted to explain why she had not contacted the police with such vital information by ultimately making reference to her criminal history. In describing her record around the time of the incident and the petitioner's trial, Johnson stated "most of it is all shoplifting." Moreover, she acknowledged that she was serving a probation violation for felony theft at the time of this post-conviction hearing.

Also providing testimony relevant to Johnson and the alleged pay phone call was the petitioner's trial counsel. This witness' recollections concerning his conversation with Johnson are fairly consistent with her account. However, he explained that no one could pinpoint the exact time of the shooting and that one witness had actually recalled the petitioner's talking on the pay phone

then approaching the victim's vehicle. Counsel, therefore, felt that Johnson's testimony would not have been helpful and might actually have aided the prosecution. Though he acknowledged not having been aware that the phone company would have a record of the local calls made from that pay phone, he again made reference to the related difficulty in pinpointing the time of the shooting. Furthermore, he explained that he had not asked Johnson if she had heard the shots fired because he had not wished "to introduce perjury" by suggesting an answer: if the witness had actually heard the shots, he believed that this was something which "normally" would have been mentioned.

As has been noted, the trial court found no basis for relief in this matter, and we agree. The petitioner has failed to prove either prong of the test for ineffective assistance of counsel. Johnson's account could have in part corroborated the testimony of the prosecution witness who claimed to have seen the petitioner walk from the pay phone to the victim's car. Moreover, the jury might have skeptically viewed Johnson's version of the events because of her relationship with the petitioner and/or her prior theft convictions.[4] The jury also may well have questioned her inaction in failing to call 911 if she had indeed heard shots and thought that her friend was wounded. Trial counsel's decision not to call this witness or seek records from the pay phone allegedly involved seems even more logical since Johnson did not mention the shots to him and no testimony was presented suggesting that evidence existed sufficiently pin-pointing the time of the offense to render the telephone call proof of alibi. The petitioner simply has not shown that counsel erred in not calling Johnson or that placing her on the stand and presenting the telephone records[5] would have resulted in a different outcome of his trial. Therefore, this issue merits no relief.

### C. Failure to Interview and/or Call at Trial Rex Allen Clayton and James DeMoss

The petitioner next avers that counsel provided ineffective assistance by not interviewing and/or calling as witnesses Rex Allen Clayton and James DeMoss. The above recitation of the facts recounts that these individuals along with Brian Binkley were passengers on the night in question in a vehicle driven by the victim. Binkley occupied the front seat while Clayton and DeMoss rode in the back seat. Through Clayton and DeMoss the petitioner hoped to obtain conflicting testimony from that of Binkley, a key prosecution witness.

When asked about his decision not to search for and interview Clayton and DeMoss, trial counsel set out numerous reasons for his inaction. For example, according to the statements which these men had given to the police, they had been unable to see what had transpired.[6] Furthermore, these were witnesses that the prosecution had listed among its own; however, the State had not been

---

[4] Within its brief the defense emphasizes that Johnson's felony theft conviction occurred long after the trial. While such seems to be the case, the witness apparently acknowledges that she already had a criminal record including misdemeanor thefts at the time of trial. Also we observe that the later felony conviction may justifiably have had an impact on the question of her credibility at the post-conviction hearing.

[5] Interestingly, the petitioner did not include the telephone records as an exhibit to this case nor does he offer an explanation for his failure to do so.

[6] There was some indication that the windows of the victim's vehicle were tinted, which would have made it difficult for Clayton and DeMoss to see anything from the back of the vehicle.

able to find them for trial.[7] Trial counsel indicated his concern that if he had located them, the men's testimony would likely have proven more beneficial to the State. He reasoned that the two probably would not have been kindly disposed toward his client. Additionally, even if Clayton and DeMoss had not seen anything, counsel expected that their testimony would include mention of the terror in which they had been placed. Subsequently counsel observed that without these risks he had been able to put before the jury, through Detective Pat Postiglione, the fact that neither Clayton nor DeMoss had been able to identify the petitioner. Moreover, trial counsel related that he had Binkley on record from a previous hearing testifying that he could not identify the petitioner as the shooter; thus, counsel did not feel a pressing need to attack Binkely's credibility through potentially damaging witnesses such as Clayton and DeMoss.

Also testifying on this issue was the petitioner, who stated his belief that these witnesses "[p]ossibly could have supported a defense." However, he did not claim to know what their purported testimony would have been beyond a vague hope for inconsistencies with Binkley's version of the event. Furthermore, he called neither Clayton nor DeMoss as witnesses at this post-conviction hearing and offered no testimony concerning any attempts to do so. Over a decade ago this Court stated: "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." State v. Black, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

Thus, without needing to address the deficient performance prong, we determine that the petitioner has once more failed to meet his burden of proof. He has not shown that the outcome of his case would have been changed had counsel interviewed these witnesses or called them to testify at trial. We, therefore, see no basis for relief arising from this contention.

### D. Alleged Inadequate Impeachment of Regina Tyson and Corey Gooch

As additional support for his ineffective assistance of counsel claim, the petitioner asserts that trial counsel failed to adequately impeach the testimony of Regina Tyson and Corey Gooch. With respect to Tyson the petitioner avers that she was the girlfriend of the petitioner's co-defendant Cordell Sykes and, thus, gave testimony biased in favor of Sykes. It is the petitioner's belief that this point should have been known by counsel and addressed on cross-examination of Tyson. The petitioner then asserts that trial counsel failed to sufficiently investigate and cross-examine Gooch concerning a pending probation violation.

Turning first to Tyson, the petitioner testified that this witness was Sykes' girlfriend. Nevertheless, he failed to call Tyson as a witness at the post-conviction hearing to confirm the allegation nor did he offer any other proof of this alleged fact. Furthermore, we note that the evidentiary hearing transcript reflects that Tara Williams, another trial witness, had been Sykes' girlfriend.[8] Counsel added that since neither Tyson nor Williams had volunteered their accounts to the authorities, he had argued to the jury that both had been "recruited" by Sykes' mother to aid her son through their testimonies.

---

[7] Apparently the State earnestly sought to locate these two individuals prior to trial to no avail, and the petitioner offers no proof that trial counsel could have found Clayton and DeMoss when the prosecution could not.

[8] The petitioner suggests that Williams was merely "one of" his co-defendant's girlfriends.

From the evidence presented, we do not see clear and convincing proof that Tyson was Sykes' girlfriend; thus, we find no deficient performance by trial counsel. Moreover, even if the petitioner's allegation is true and had been the subject of cross-examination at trial, we do not find a reasonable probability that the result of the petitioner's trial would have been altered. Therefore, we conclude that this allegation lacks merit.

We next examine the petitioner's claim relative to Corey Gooch. All agree that Gooch had a pending probation revocation at the time of the petitioner's trial and that trial counsel did not cross-examine Gooch with this detail. According to the petitioner's direct appeal trial counsel discovered this information after the close of the proof but before closing argument. Taylor, 1998 WL 849324 at *5. However, counsel did not attempt to recall Gooch to the stand.

While counsel admitted that he made a mistake in not more thoroughly investigating Gooch's record, he offered support for his decision not to recall the witness in order to ask about the potential violation. According to trial counsel, "Mr. Gooch, I think, was the most unintelligible witness I've ever seen in the courtroom,"[9] and though his testimony was harmful to the petitioner if understood, counsel's hope was that the jury had not been able to thoroughly discern what had been said. Had counsel recalled Gooch, the attorney was concerned that Gooch might have expressed himself more clearly and caused more damage.

As we analyze this situation, we acknowledge that this witness could have been handled more deftly at the outset. However, a defendant is not entitled to "perfect representation." Vermilye v. State, 754 S.W.2d 82, 85 (Tenn. Crim. App. 1987). Furthermore, this Court has previously held that Gooch's testimony "was primarily cumulative to the testimony of Binkley and Tyson." Taylor, 1998 WL 849324 at *5. Concerning counsel's decision not to attempt recalling this witness, our Supreme Court has held that the reviewing court assessing the performance of counsel is not "to 'second guess' tactical and strategic choices pertaining to defense matters or to measure a defense attorney's representation by '20-20 hindsight.'" Henley, 960 S.W.2d at 579; see also Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The decision not to recall Gooch appears to have been a reasoned one not constituting deficient performance. Additionally, the petitioner has not shown that the outcome of his trial would have been different had Gooch been asked about his pending violation. Evaluating the testimony before us, we fail to see that the evidence preponderates against the trial court's finding in denying the petitioner relief based on ineffective assistance of counsel. This issue also lacks merit.

### Cumulative Effect

Finally, the petitioner avers that the cumulative effect of these alleged errors rises to the level of ineffective assistance of counsel. However, based on our findings above that counsel was not ineffective in any particular respect, we conclude that the petitioner is not entitled to relief on this ground.

---

[9] After trial the petitioner's trial counsel and the prosecuting attorney met outside the courtroom and seriously asked if either knew what Gooch had said: neither were sure. Furthermore, trial counsel stated that he "was pretty amazed at reading the transcript" and agreed with the prosecution that the court reporter "probably was the only one who knew what Mr. Gooch said" because of her proximity to him during his testimony. In general counsel found Gooch incoherent and mentioned that this witness' speech had been "greatly slurred."

## Conclusion

For the foregoing reasons we find that none of the petitioner's ineffective assistance allegations merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE