IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 27, 2006

## SCOTT M. CRAIG v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Bradley County**
**No. M-03-341     R. Steven Bebb, Judge**

---

**No. E2005-02359-CCA-R3-PC - Filed August 2, 2006**

---

Aggrieved of his aggravated kidnapping and aggravated rape convictions, the petitioner, Scott M. Craig, sought post-conviction relief, which was denied by the Criminal Court of Bradley County after an evidentiary hearing.  On appeal, the petitioner presents several issues of the ineffective assistance of counsel. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ROBERT W. WEDEMEYER, JJ., joined.

Charles Richard Hughes, Jr., District Public Defender; and A. Wayne Carter, Assistant Public Defender, for the Appellant, Scott M. Craig.

Paul G. Summers, Attorney General & Reporter; Cameron L. Hyder, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Steven Davis Crump, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

A jury convicted the petitioner of one count of aggravated kidnapping and two counts of aggravated rape.  Following conviction, the trial court sentenced the petitioner to 15 years for each of the aggravated rape convictions, to be served concurrently, and eight years for the aggravated kidnapping conviction, to be served consecutively to the aggravated rape convictions.

On direct appeal, this court affirmed all convictions and the sentence for aggravated kidnapping, but it reversed the sentences imposed for the aggravated rape convictions.  *See State v. Scott M. Craig*, No. E2001-01528-CCA-R3-CD, slip op. at 13 (Tenn. Crim. App., Knoxville, Aug. 27, 2002).  The court remanded the case for the trial court to impose a 20-year sentence for each aggravated rape conviction and for a new sentencing hearing to decide whether consecutive sentencing would be appropriate.  *See id.*  The trial court imposed the two concurrent 20-year

sentences and ordered these sentences to run concurrently with the eight-year aggravated kidnapping sentence. The petitioner then filed a timely petition for post-conviction relief, which the trial court denied after an evidentiary hearing.

On appeal of the denial of his petition, the petitioner in essence raises the following issues of the ineffective assistance of trial counsel:

> 1. Trial counsel's lack of preparation, including:
>     a. the failure to meet with and advise the petitioner, and
>     b. the failure to interview possible defense witnesses;
> 2. Trial counsel's failure to request a mental evaluation; and
> 3. Trial counsel's failure to report possible communication between a state witness and a juror.

Because the post-conviction court's denial of relief is supported in the record, we affirm that court's judgment.

*I. The Post-Conviction Hearing*

At the post conviction hearing, Margaret Burris, the petitioner's mother, testified that she hired trial counsel to represent the petitioner on the aggravated rape and aggravated kidnapping charges. She testified that trial counsel stated, "It's [a] fairly easy [case] because it's a 'he said-she said' situation," and trial counsel told her that the outcome depended upon whom the jury believed. According to Mrs. Burris, trial counsel never questioned her regarding the petitioner's mental health. The petitioner had mental health problems in the past, and on one occasion, he tried to commit suicide. Mrs. Burris further testified that during the trial, she saw state's witness Jackie Scoggins, the victim's employer, speak to a juror. She told trial counsel about the occurrence but not the court officers or the court, and to her knowledge, trial counsel did not inform the court.

The petitioner testified that he first spoke with trial counsel three weeks after his preliminary hearing, at which he was represented by different counsel. From this conversation until the petitioner's trial approximately one year later, the petitioner spoke with trial counsel on three or four occasions. The petitioner spoke with trial counsel on the petitioner's court dates, and they corresponded by mail. During these communications, according to the petitioner, trial counsel did not discuss the petitioner's potential testimony or his right not to testify. The petitioner testified that trial counsel led him to believe that he had to testify, and he claimed that trial counsel did not prepare him for his testimony. The petitioner stated that trial counsel never discussed the elements of the crimes, the victim's possible testimony, the state's potential evidence, the state's burden of proof, or the type of jurors desired. In addition, the petitioner testified that trial counsel led him to believe that the jury would not convict him. Had trial counsel explained this information or had he not led

the petitioner to expect an acquittal, the petitioner stated that he "would have jumped at the best deal [the state] could give [him]."[1]

The petitioner further testified that the trial court made comments during the trial that caused the petitioner to believe trial counsel was not prepared. He testified that the trial court stated, "You[, trial counsel,] are convicting your own client." The petitioner did not testify to any other comments made by the trial judge.

The petitioner also claimed that trial counsel failed to interview possible defense witnesses. The petitioner built cabinets for Jack Easterly, the owner of Jack Easterly's Custom Cabinets. The petitioner told trial counsel that Mr. Easterly and Phillip Poorle, another employee of Mr. Easterly's, would testify that the petitioner always carried a knife because he used it "as a tool" while building cabinets.[2] Neither Mr. Easterly nor Mr. Poorle testified at the post-conviction hearing.

In addition, the petitioner testified that he did not suffer from mental health issues at the time of the crime or at the time of trial. However, he suffered from mental health issues approximately "four to five years" before the time of the crime as a result of marital problems. He stated that he was treated twice, once for attempted suicide and the second for a nervous breakdown. The record reflects neither where the petitioner was treated nor a diagnosis. However, the record does reflect that the petitioner had never been declared incompetent or insane.

On cross-examination, the petitioner testified that trial counsel hired a private investigator who interviewed all state witnesses. The investigator also met with the petitioner, and they discussed the witnesses' interviews. The petitioner was not aware of any interviews conducted by trial counsel or the private investigator with the victim, but trial counsel did provide the petitioner with the victim's statement. The petitioner further stated that he remembered trial counsel questioning potential jurors during jury selection. The petitioner claimed that he requested a mental evaluation in his Motion for a New Trial, but he was never evaluated. In addition, the petitioner

---

[1] At the post-conviction hearing, the petitioner argued that trial counsel was ineffective because trial counsel did not properly discuss the plea offers with him. On cross-examination, the petitioner admitted that trial counsel did discuss the offers on his court dates. He did not testify as to what trial counsel told him regarding the offers. The trial court ruled that trial counsel was not ineffective regarding the handling of the plea issue. The petitioner did not raise this alleged instance on appeal; therefore, it is not before us for review.

[2] At trial, the victim, Angela Taylor, testified that the petitioner forced her from her place of employment into his vehicle. *State v. Scott M. Craig*, slip op. at 2. Once inside the vehicle she noticed that he was carrying a knife on his belt. *Id*. After forcing the victim to perform fellatio on him while he drove his vehicle and after penetrating the victim vaginally while the vehicle was stopped on a deserted gravel road, the petitioner drove to another location and made the victim exit the vehicle and start walking to an empty field. *Id*. While standing in the field, the victim stated that the petitioner pulled out his knife, placed it on her throat, and stated, "'I know you are going to tell, so I'm going to kill you.'" *Id*., slip op. at 3. The victim pleaded for her life, so the petitioner lowered the knife, and they returned to the petitioner's vehicle. *Id*. Ultimately, the petitioner returned the victim to the vicinity of her place of employment. *Id*.

recognized that both he and the state agreed that the knife belonged to him and was in his possession at the time of the offenses.

At the post-conviction hearing, the state called trial counsel, who testified that he discussed the evidence with the petitioner, discussed the petitioner's testimony with the petitioner, and gave the petitioner copies of discovery. Trial counsel hired Bill Capillo, a private investigator, to facilitate building a defense. Mr. Capillo interviewed the state's witnesses, the victim's co-workers, the petitioner's ex-wife, the petitioner's mother, and the petitioner. Trial counsel viewed the case as a "consent defense case," and he knew that witness credibility was important.

Trial counsel could not remember whether the petitioner recommended Mr. Easterly as a potential witness. He explained that he hired Mr. Capillo to investigate such issues and to interview possible witnesses. He further explained that not calling Mr. Easterly was trial strategy. Trial counsel decided that the petitioner's consistent carrying of a knife was not an issue "that needed to be really dwelled on during the trial." Trial counsel admitted on cross-examination that he did not believe Mr. Capillo interviewed Mr. Easterly, but he reiterated that, in his opinion, consistently carrying a knife did not affect the consent issue.

Trial counsel further testified, regarding the mental health issue, "There was something about mental issues that I wanted to keep out [of evidence] because I felt that Mr. Craig was going to have to testify." He explained that although he could not remember the exact facts, he did not want to provide the state with "ammunition" to attack the petitioner's credibility.

Trial counsel did not remember Mrs. Burris' statement regarding a state witness speaking with a juror. He testified that even if this information had come to his attention, he might not necessarily have reported it to the court.

*II. The Post-conviction Court's Findings*

Regarding the petitioner's claim that trial counsel failed to prepare the case, including the failure to prepare the petitioner for trial, the post-conviction court found that trial counsel hired a private investigator, who interviewed state witnesses. Trial counsel provided this information to the petitioner, and he provided the victim's statement to the petitioner. Therefore, the court found in essence that trial counsel competently prepared the case. In addition, the court found that the question of presenting Mr. Easterly to testify was a matter of trial strategy. Regarding the mental health issue, the post-conviction court found that the petitioner did attempt to commit suicide and was treated for another mental health episode four to five years prior to trial; however, the petitioner was never declared insane or incompetent. The court found that the decision not to seek a mental evaluation was part of trial strategy. The post-conviction court further stated that it could not

-4-

consider the juror issue because the petitioner failed to raise the issue in his petition for post-conviction relief and in his amended petition.[3]

### III. Post-conviction Relief

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

### A. Ineffective Assistance of Counsel

The Sixth Amendment of the United States Constitution and article I, section 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see also Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975). "Claims of ineffective assistance of counsel are considered mixed questions of law and fact and are subject to de novo review." *Serrano v. State*, 133 S.W.3d 599, 603 (Tenn. 2004); *see State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When a defendant claims ineffective assistance of counsel, the court must determine (1) whether counsel's performance was within the range of competence demanded of attorneys in criminal cases, *Baxter*, 523 S.W.2d at 936, and (2) whether any deficient performance prejudiced the petitioner, *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984); *see also Powers v. State*, 942 S.W.2d 551, 557 (Tenn. Crim. App. 1996). Courts need not address these components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. *Henley*, 960 S.W.2d at 580.

A reviewing court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2070. This court should not second-guess tactical and strategic decisions by defense counsel. *Henley*, 960 S.W.2d at 579. It must evaluate counsel's performance from counsel's perspective at the time of the alleged error and in light of the totality of the evidence. *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2070.

However, this court's deference to counsel's tactical decisions will depend upon counsel's adequate investigation of defense options. *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987). Assuming adequate investigation, the fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. *Jerry Whiteside*

---

[3] At the post-conviction hearing, before the arguments by counsel, the state objected to evidence presented by the petitioner regarding the juror issue because the petitioner failed to raise the issue in his pleading.

*Dickerson v. State*, No. 03C01-9710-CR-00472 (Tenn. Crim. App., Knoxville, Sept. 16, 1998); *Thompson v. State*, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997).

In sum, a defendant is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). To show prejudice, the petitioner must demonstrate that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.

### *IV. Disposition of Appellate Post-conviction Issues*

### *A. Petitioner's failure to cite to the record in his post-conviction appellate brief*

We first address the state's contention that "petitioner's issues on appeal have been waived . . . because the petitioner failed to cite to any portion of the appellate record in his appellate brief." *See* Tenn. R. App. P. 27(a)(7) ("The brief of the appellant shall contain . . . [a]n argument . . . with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on . . . ."); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). The state is correct in its contention that the petitioner failed to cite the record in the Argument section of his brief. Instead, the petitioner vaguely referenced trial counsel's alleged instances of ineffective assistance. However, the petitioner cited the record in the Statement of Facts, explicitly referencing the specific instances of the alleged ineffective assistance of counsel vaguely referred to in the Argument section. In the interest of justice, we opt to consider the issues on the merits.

### *B. Trial counsel's lack of preparation*

On appeal, the petitioner limits his claims of trial counsel's lack of preparation to the following issues: (1) the failure to meet with and advise the petitioner, and (2) trial counsel's failure to interview possible defense witnesses.

The petitioner's first issue of deficient trial preparation is the related claim that trial counsel failed to meet with and advise the petitioner. At the post-conviction hearing, the petitioner testified that trial counsel only met with him three or four times prior to trial. The petitioner stated that trial counsel did not discuss the petitioner's potential testimony, that trial counsel did not explain his right not to testify, and that trial counsel did not prepare him for this testimony. He further testified that trial counsel never discussed the elements of the crimes, the victim's possible testimony, the state's potential evidence, the state's burden of proof, or the type of jurors desired. In testifying at the post-conviction hearing, the petitioner did nothing more than make these charges. He failed to articulate specific ways in which trial counsel's advice and consultations were deficient,

and he failed to demonstrate that these actions prejudiced him. Thus, the petitioner has failed to show by clear and convincing evidence that counsel's services were ineffective.

The petitioner further contends that trial counsel was deficient in his preparation because he failed to interview possible defense witnesses. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses . . . , these witnesses should be presented by the [post-conviction] petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). If he fails to do so, he generally fails to establish ineffective assistance of counsel. *Id*. The post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. *Id*.; *see also Wade v. State*, 914 S.W.2d 97, 102 (Tenn. Crim. App. 1995). At the post-conviction hearing, the petitioner testified that Mr. Easterly and Mr. Poorle could confirm that the petitioner consistently carried a knife; however, the petitioner did not present either of these witnesses. Because the petitioner did not present these witnesses at the hearing, he has failed to establish ineffective assistance of counsel.

### C. Trial counsel's failure to request a mental evaluation

Next, the petitioner alleges that trial counsel failed to request a mental evaluation. However, the petitioner failed to present any evidence in the post-conviction hearing that he suffered from a mental condition at the time of his crimes, or if he did suffer from a mental deficiency, that it would have provided a legal defense or rendered him incompetent to stand trial. The post-conviction court noted that the petitioner received mental health treatment because of marital problems "four to five years prior to trial." Furthermore, because trial counsel testified that he decided to keep the petitioner's mental health issues out of evidence, the post-conviction court found that the decision not to seek a mental evaluation was part of trial strategy.

We conclude the post-conviction court's findings are apt. Evidence of the petitioner's mental state "four to five years" prior to the crime does not establish that he lacked the capacity to form the mens rea for aggravated rape and aggravated kidnapping at the time of the crime, and the petitioner offered no other evidence in the evidentiary hearing to establish that a defense based upon mental disease or defect would have been supportable or efficacious. Moreover, the petitioner testified that he suffered no mental health issues at the time of the crime or at the time of trial. Accordingly, we hold that the petitioner has failed to establish either deficient performance or prejudice resulting from counsel's representation.

### D. Trial counsel's failure to report possible communication
### between a state's witness and a juror

Last, the petitioner contends that trial counsel was ineffective for failing to report communication between state's witness, Jackie Scoggins, and a juror. The petitioner failed to plead this particular claim of ineffectiveness in his post-conviction petition, and the state argues that this issue should not be considered. The state's objection is problematic inasmuch as it was not raised until after proof was received, and we note that Tennessee Supreme Court Rule 28, section 8(D)(5),

provides, "If evidence is objected to on the basis that it concerns issues not raised in the petition or answer, the court may allow amendments and *shall do so freely* when the presentation of the merits of the cause will otherwise be subserved." Tenn. R. S. Ct. 28 § 8(D)(5) (emphasis added). At any rate, the petitioner did not establish that he was prejudiced by this claimed deficient performance; therefore, relief was properly denied on the merits.

## *IV. Conclusion*

Having reviewed all of the petitioner's claims for post-conviction relief and finding that the record supports the trial court's denial of his claims, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE