IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 23, 2007

**JEREMY WAYNE PITTARD v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-58102     Don R. Ash, Judge**

---

**No. M2006-01834-CCA-R3-PC - Filed on June 21, 2007**

---

Petitioner, Jeremy Wayne Pittard, was indicted on one count of rape of a child, a Class A felony. Petitioner entered a best interest plea to the offense of attempted rape of a child, a Class B felony, and agreed to a sentence of twelve years as a Range I standard offender. Petitioner argues on appeal that the trial court erred in denying him post-conviction relief. After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Dale O. Quillen, Nashville, Tennessee, for the appellant, Jeremy Wayne Pittard.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Laurel Nutt, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

The minor victim will be referred to by her initials, L.P. According to the statement of facts presented by the State at Petitioner's plea submission hearing, Petitioner thought that L.P. was his daughter when she was born but subsequent DNA testing revealed that Petitioner was not L.P.'s father. Petitioner continued, however, to spend time with L.P. Petitioner picked up three-year-old L.P. from her mother's home and drove her to Petitioner's home in Rutherford County. At some point during the ride to Petitioner's home, Petitioner and L.P. stopped to use the restroom. The State provided the following summary:

And events occurred whereas the little girl was penetrated and was bleeding and hurt and was eventually taken to the doctor, and it was established that she had been sexually penetrated. And there was some medical damage. [L.P.] was [three] years old at the time. She did not make a statement because of her age, but she did make some excited utterances identifying the defendant [as the one] who penetrated her.

At the plea submission hearing, the trial court questioned Petitioner as required by Rule 11 of the Tennessee Rules of Criminal Procedure. Petitioner acknowledged that no one had forced or coerced him into entering his best interest plea, and he did not indicate any disagreement with the State's statement of the facts supporting the charged offense. Petitioner acknowledged that certain constitutional rights were waived as a result of the entry of his plea. Petitioner informed the trial court that he had reviewed the plea agreement with his counsel, and that his counsel had explained to him the range of punishment for the charged offense, what the State would have to prove to support a conviction, and any defenses he might have. Petitioner acknowledged that he and his counsel had discussed the case "extensively."

Trial counsel informed the trial court at the plea submission hearing that Petitioner had been mentally evaluated by the Guidance Center while incarcerated on the current charges and had been found competent to enter into his negotiated plea agreement. Petitioner acknowledged that he understood the results of his mental evaluation. Trial counsel asked Petitioner whether Petitioner was confident that he had understood all of the legal terms that had arisen during their conversations about the case, and Petitioner responded, "Yes, sir." The trial court concluded that the factual basis presented by the State was sufficient to support a best interest plea to the charge of attempted rape of a child.

## II. Post-Conviction Hearing

Dr. Kimberly Brown, director of the forensic evaluation team at Vanderbilt University, testified on Petitioner's behalf. Dr. Brown was qualified as an expert in her field. Dr. Brown testified that at post-conviction counsel's request, she had reviewed Petitioner's numerous medical records, administered psychological tests to Petitioner on April 10, 2006, and conducted a clinical forensic interview. Dr. Brown said that as part of her evaluation she also reviewed the videotape and corresponding transcript of Petitioner's statement to the investigating officers about the charged offense which had been taken on November 24, 2003. Based on Petitioner's interviews, test results, and the review of the videotape of Petitioner's statement to the police, Dr. Brown concluded that Petitioner was "of borderline intellectual functioning," and that his statement to the police was not knowingly or intelligently made.

Dr. Brown acknowledged that her evaluation occurred more than a year after Petitioner's guilty plea submission hearing. Dr. Brown said that her evaluation of Petitioner's competency during the taking of his statement to the police was based solely on her review of the transcript and videotape of the event. Dr. Brown acknowledged that she also evaluated Petitioner's competency to stand trial, but that report was not included in the report introduced as an exhibit at the post-

conviction hearing. Dr. Brown said that it was her conclusion that Petitioner was competent to enter into a negotiated plea agreement.

Petitioner's trial counsel identified the videotape and transcript of Petitioner's statement to the police. On cross-examination, trial counsel testified that both he and Petitioner watched the videotape, and they discussed Petitioner's interview with the investigating officers. Trial counsel told Petitioner that he could file a motion to suppress the statement, but trial counsel said that he did not see a "great likelihood" that Petitioner would prevail on the motion. Trial counsel said that he discussed the State's evidence which included L.P.'s medical records. Trial counsel stated that Petitioner decided to enter a best interest plea based on all of the evidence, not just his statement to the police.

Petitioner did not testify at the post-conviction hearing. The trial court noted that a mental evaluation of Petitioner had been conducted prior to the guilty plea submission hearing, and that Petitioner was found competent to enter into a negotiated plea agreement. The trial court found that Petitioner's trial counsel had rendered effective assistance of counsel during the negotiation of Petitioner's plea. The trial court found that even if trial counsel's assistance was deficient in some regard, Petitioner had failed to show that the result of the proceeding would have been different.

## III. Analysis

In his appeal, Petitioner argues that trial counsel's assistance was deficient because he failed to adequately investigate Petitioner's mental capacity at the time Petitioner gave his statement to the police, which evaluation Petitioner contends would have shown that his waiver of his *Miranda* rights was not knowingly or voluntarily made. Petitioner argues that but for trial counsel's deficient performance, there is a reasonable probability that he would not have entered into a plea agreement based on the three-year-old victim's inability to provide more than "excited utterances" as evidence against him and her inability to provide a specific time frame for the offense.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that the services rendered by trial counsel were deficient and that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently and, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *State v. Henley*, 960 S.W.2d 572, 580 (Tenn. 1997).

This Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id*. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact ... thus, [appellate] review of [these issues] is *de novo* " with no presumption of correctness. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn.1999). Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id*. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Petitioner argues that Dr. Brown's conclusion that he was incapable of comprehending the consequences of waiving his *Miranda* rights indicates that trial counsel's investigation as to Petitioner's mental capacity was deficient. Petitioner contends that trial counsel should have conducted a more extensive evaluation.

Dr. Brown interviewed Petitioner for approximately four and one-half hours at the DeBerry Special Needs Facility in Nashville. During the interview, Dr. Brown administered to Petitioner the Mini-Mental State Examination, the Wechsler Adult Intelligence Scale, and the Test of Memory Malingering. Dr. Brown's conclusion that Petitioner misunderstood the consequences of waiving his *Miranda* rights and that his statement to the police was not intelligently made was based generally on what she believed to be the evasiveness of Petitioner's answers during the interview, his acceptance of the evidence against him "that a brighter individual would have been able to more critically evaluate for weaknesses and bias," and Petitioner's apparent belief that if he talked with the police officers, he would be released on bond. Dr. Brown, however, also concluded that Petitioner was competent at the time he entered into his negotiated plea agreement based on her evaluation of Petitioner's medical records, his test scores, and his personal interviews.

Trial counsel testified that he discussed Petitioner's case with him on several occasions, and that they discussed all of the evidence against him. Petitioner acknowledged at the guilty plea submission hearing that he knew that he had been found competent to stand trial, and he did not voice any disagreement with that conclusion. Petitioner does not suggest what further mental evaluations should, or could, have been done. Petitioner did not present any proof that any further mental evaluation would have affected his decision to enter a best interest plea to the charged offenses, or that such further evaluation would have arrived at a different conclusion as to Petitioner's competency.

Based on the foregoing, we conclude that the evidence does not preponderate against the post-conviction court's finding that trial counsel's assistance was not deficient, or that Petitioner had shown that but for the conduct of trial counsel, he would not have entered into a negotiated plea agreement and would have proceeded to trial. Because Petitioner did not testify at the evidentiary

hearing, there is no evidence that if a motion to suppress Petitioner's statement had been filed and argued, Petitioner would have elected to proceed to trial on a Class A felony charge instead of entering a best interest plea of guilty to a Class B felony charge. Petitioner is not entitled to relief on this issue.

## CONCLUSION

After review, we affirm the judgment of the post-conviction court.

_____

THOMAS T. WOODALL, JUDGE